

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-31-1998

# Rolo v. City Investing Co

Precedential or Non-Precedential:

Docket 95-5768

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Rolo v. City Investing Co" (1998). *1998 Decisions.* Paper 210.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/210

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 31, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 95-5768 & 96-5128

JOSE and ROSA ROLO; and DR. WILLIAM and
ROSEANNE TENERELLI

v.

CITY INVESTING COMPANY LIQUIDATING TRUST;
AmBASE CORPORATION; CARTERET BANCORP, INC.;
FEDERAL DEPOSIT INSURANCE CORPORATION, as
Successor to RESOLUTION TRUST CORPORATION, in its
capacity as RECEIVER OF CARTERET SAVINGS BANK,
FA; THE HOME INSURANCE COMPANY; GEORGE T.
SCHARFFENBERGER; MARSHALL MANLEY; EDWIN I.
HATCH; EBEN W. PYNE; REUBIN O'D. ASKEW;
HOWARD L. CLARK, JR.; CHARLES J. SIMONS;
PETER R. BRINKERHOFF; DAVID F. BROWN; ROBERT F.
EHRLING; CRAVATH, SWAINE & MOORE; DAVID G.
ORMSBY; FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as RECEIVER OF
SOUTHEAST BANK, NA; PAINEWEBBER INCORPORATED;
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; THE
PRUDENTIAL INSURANCE COMPANY OF AMERICA;
NATIONAL BANK OF CANADA; CITICORP REAL ESTATE,
INC.; FIRST NATIONAL BANK OF BOSTON; FEDERAL
NATIONAL MORTGAGE ASSOCIATION; FEDERAL HOME
LOAN MORTGAGE CORPORATION; CHASE FEDERAL
BANK, FSB; CITIZENS AND SOUTHERN TRUST
COMPANY (FLORIDA), NA; REGIONS BANK OF
LOUISIANA, as Successor to SECOR BANK, FSB;
OXFORD FIRST CORP.; THE OXFORD FINANCE
COMPANIES, INC.; LASALLE BUSINESS CREDIT, INC.; as
Successor to STANCHART BUSINESS CREDIT, INC.;

HARBOR FEDERAL SAVINGS AND LOAN ASSOCIATION;
GREYHOUND FINANCIAL CORPORATION; LLOYDS BANK
PLC; and JOHN DOES 1-10

       Jose Rolo, Rosa Rolo, Dr. William
       Tenerelli, and Roseanne Tenerelli,
       and proposed intervenor plaintiffs
       Dominick J. Capezza, Estrelita
       Capezza, Jacques Cormier, Anite
       Cormier, Steven Kalinowski,
       Bernard Kalinowski, Charles R.
       Panellino, and Clarisse Panellino,

       Appellants in 95-5768

       proposed intervenor plaintiffs
       Dominick J. Capezza, Estrelita
       Capezza, Jacques Cromier, Anite
       Cormier, Steven Kalinowski,
       Bernard Kalinowski, Charles R.
       Panellino, and Clarisse Panellino,

       Appellants in 96-5128

(Caption amended per Clerk's 11/27/95, 1/3/96 &
2/29/96 orders)

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 90-cv-04420)

Argued September 16, 1996

Before: BECKER, NYGAARD and ROTH, Circuit Judges

(Opinion Filed August 31, 1998)

Herbert I. Deutsch, Esq.
Roy A. Heimlich, Esq. (Argued)
Deutsch & Frey
18 East 41st Street
6th Floor
New York, NY 10017

William J. O'Brien, Esq.
Delany & O'Brien
306 West Somerdale Road
Voorhees, NJ 08043

Attorneys for Appellants
Jose Rolo; Rosa Rolo; William
Tenerelli; Roseanne Tenerelli;
Dominick J. Capezza; Estrelita
Capezza; Jacques Cormier; Anite
Cormier; Steven Kalinowski;
Bernard Kalinowski; Charles R.
Panellino and Clarisse Panellino

Douglas S. Eakeley, Esq. (Argued)
Lowenstein, Sandler, Kohl,
 Fisher & Boylan
65 Livingston Avenue
Roseland, NJ 07068

Paul M. Dodyk, Esq.
Cravath, Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

 Attorneys for Appellees
 AmBase; City Investing Company
 Liquidating Trust; Carteret
 Bancorp Inc.; George T.
 Scharffenberger; Marshall Manley;
 Edwin I. Hatch; and Eben W. Pyne

Nicholas deB. Katzenbach, Esq.
 (Argued)
906 Great Road
Princeton, NJ 08540

Peter N. Perretti, Jr., Esq.
Riker, Danzig, Scherer, Hyland &
 Perretti
One Speedwell Avenue
Headquarters Plaza
Morristown, NJ 07962-1981

 Attorneys for Appellees
 Cravath, Swaine & Moore and
 David G. Ormsby

Alan J. Kluger, Esq. (Argued)
Steve I. Silverman, Esq.
Kluger, Peretz, Kaplan & Berlin
201 South Biscayne Boulevard
Suite 1970
Miami, FL 33131

Joseph A. Boyle, Esq.
Kelley, Drye & Warren
5 Sylvan Way
Parsippany, NJ 07054

 Attorneys for Appellee
 Greyhound Financial Corporation

John W. Little, III, Esq.
Gerry S. Gibson, Esq. (Argued)
Steel, Hector & Davis
777 South Flagler Drive
1900 Phillips Point West
West Palm Beach, FL 33401

Joseph J. Schiavone, Esq.
Budd, Larner, Gross, Rosenbaum,
 Greenberg & Sade
150 John F. Kennedy Parkway
CN 1000
Short Hills, NJ 07078-0999

 Attorneys for Appellee
 Federal National Mortgage
 Association

Steven M. Edwards, Esq.
Davis, Scott, Weber & Edwards
100 Park Avenue
32nd Floor
New York, NY 10017

 Attorneys for Appellees
 David F. Brown and Robert F.
 Ehrling

Elizabeth J. Sher, Esq.
Pitney, Hardin, Kipp & Szuch
P.O. Box 1945
Morristown, NJ 07962-1945

 Attorney for Appellee
 Home Insurance Co.

Peter W. Homer, Esq.
Homer & Bonner
100 Southeast 2nd Street
3400 International Place
Miami, FL 33131

 Attorney for Appellee
 Citizens and Southern Trust
 Company
 National Association

5

Joseph L. Buckley, Esq.
Mark E. Duckstein, Esq.
Sills, Cummis, Zuckerman, Radin,
 Tischman, Epstein & Gross
One Riverfront Plaza
Newark, NJ 07102

Robert T. Wright, Jr., Esq.
Shutts & Bowen
201 South Biscayne Boulevard
1500 Miami Center
Miami, FL 33131

 Attorneys for Appellees
 Reubin O'D. Askew; Howard L.
 Clark, Jr.; Charles J. Simons; and
 Peter R. Brinkerhoff

James J. Hagan, Esq.
Bruce D. Angiolillo, Esq.
Simpson, Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017

James M. Altieri, Esq.
Shanley & Fisher
131 Madison Avenue
Morristown, NJ 07962-1979

 Attorneys for Appellee
 Painewebber, Inc.

Warren H. Colodner, Esq.
Kirkpatrick & Lockhart
1251 Avenue of the Americas
45th Floor
New York, NY 10020-2195

 Attorneys for Appellee
 Merrill, Lynch, Pierce, Fenner &
 Smith, Inc.

6

Steven H. Reisberg, Esq.
Willkie, Farr & Gallagher
153 East 53rd Street
One Citicorp Center
New York, NY 10022

Robert E. Bartkus, Esq.
Pinto, Rodgers and Kopf
107 Washington Street
Morristown, NJ 07960

 Attorneys for Appellee
 Prudential Insurance Company of
 America

L. Louis Mrachek, Esq.
Roy E. Fitzgerald, Esq.
Gunster, Yoakley, Valdes-Fauli &
 Stewart
777 South Flagler Drive
Suite 500 East
West Palm Beach, FL 33401

 Attorney for Appellee
 National Bank of Canada

George J. Wade, Esq.
Shearman & Sterling
153 East 53rd Street
New York, NY 10022

Steven M. Richman, Esq.
Herrick, Feinstein
104 Carnegie Center
Suite 200
Princeton, NJ 08540

 Attorneys for Appellee
 Citicorp Real Estate

Steven I. Adler, Esq.
Cole, Schotz, Meisel, Forman &
 Leonard
25 Main Street
P.O. Box 800, Court Plaza North
Hackensack, NJ 07602

 Attorney for Appellee
 The First National Bank of Boston

Gerald J. Houlihan, Esq.
Houlihan & Partners
Douglas Centre
2600 Douglas Road
Suite 600
Miami, FL 33134

 Attorneys for Appellee
 Chase Federal Bank

Robert L. Young, Esq.
Carlton, Fields, Ward, Emmanuel,
 Smith & Cutler
P.O. Box 1171
Orlando, FL 32802

 Attorney for Appellee
 Harbor Federal Savings and Loan
 Association

David T. Eames, Esq.
Bodian & Eames
450 Lexington Avenue
Suite 3810
New York, NY 10017

 Attorney for Appellee
 Lloyds Bank, PLC

Edward B. Deutsch, Esq.
McElroy, Deutsch & Mulvaney
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075

 Attorney for Appellee
 Regions Bank LA, as Successor to
 SECOR Bank, FSB

Kevin M. Hart, Esq.
Stark, & Stark
993 Lenox Drive, Princeton Pike
Corporate Center
CN 5315
Princeton, NJ 08543-5315

 Attorney for Federal Deposit
 Insurance Corporation, in its
 capacity as Receiver of Southeast
 Bank, NA and Federal Deposit
 Insurance Corporation, as
 Successor to Resolution Trust, in
 its capacity as Receiver of Carteret
 Savings Bank, FA

John H. Denton, Esq.
Connell, Foley & Geiser
85 Livingston Avenue
Roseland, NJ 07068

 Attorneys for Appellee
 Federal Deposit Insurance
 Corporation, as Successor to
 Resolution Trust, in its capacity as
 Receiver of Carteret Savings
 Bank, FA

J. Marbury Rainer, Esq.
Parker, Hudson, Rainer & Dobbs
285 Peach Center Avenue
1500 Marquis Two Tower
Atlanta, GA 30303

 Attorney for Appellee
 LaSalle Business Credit, as
 Successor to Stanchart Business
 Credit, Inc.

George Kielman, Esq.
Mailstop 202
Federal Home Loan Mortgage
 Corporation
Legal Department
8200 Jones Branch Drive
McLean, VA 22102

George T. Ford, Esq.
Landman, Corsi, Ballaine & Ford
One Gateway Center
Suite 500
Newark, NJ 07102

 Attorneys for Appellee
 Federal Home Loan Mortgage
 Corporation

Alan I. Moldoff, Esq.
Adelman, Lavine, Gold & Levin
1900 Two Penn Center
Philadelphia, PA 19102

 Attorney for Appellees
 Oxford Fin Co., And Oxford First
 Corp.

OPINION OF THE COURT

ROTH, Circuit Judge:

This case arises from the sale of residential realty in
Florida. Plaintiffs, Jose and Rosa Rolo and Dr. William and

Rosanne Tenerelli, purchased lots and homes from General Development Corporation ("GDC") and its subsidiary GDV Financial, Inc. ("GDV"). They claim that they were deceived by a fraudulent marketing scheme which induced them to purchase residential lots and homes at inflated prices. This case and its related proceedings have a long and convoluted history. The present appeal is the third time this Court has considered this case.

Plaintiffs originally filed suit in 1989 in the United States District Court for the District of New Jersey alleging claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. S 1961 et seq (RICO), the Interstate Land Sales Full Disclosure Act, 15 U.S.C. S 1701 et seq ("Land Sales Act"), federal securities laws, and common law fraud against thirty-five named defendants. They also sought to represent a putative class consisting of all persons who purchased houses or homesites from GDC or GDV over the period from 1957 to 1990 and who are members of the North Port Out-of-State Lot Owners Association ("NPA").

The district court dismissed plaintiffs' claims in their entirety. Rolo v. City Investing Co. Liquidating Trust, 845 F. Supp. 182 (D.N.J. 1993). The court held that plaintiffs' RICO claims were time-barred; plaintiffs had failed to plead adequately the existence of a RICO conspiracy; and they had failed to satisfy the essential requirements for pleading aider and abettor liability under RICO. Although the court found that plaintiffs' complaint stated claims under the Land Sales Act for aiding and abetting against some defendants, but not others, all of their Land Sales Act Claims were time barred. The district court dismissed plaintiffs' Securities Act claims on the grounds that the sales contracts and mortgage notes were not securities within the meaning of S 10 of the 1934 Act or Rule 10b-5. Having dismissed all of plaintiffs' federal claims, the court declined to exercise pendent jurisdiction over plaintiffs' common law fraud claims. Finally, the district court denied plaintiffs' Motion to file a Second Amended Complaint that would have restructured and reformulated their action. Following a remand for reconsideration of plaintiffs' claims in light of our decision in Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258 (3d Cir. 1995), the district court

11

reaffirmed its dismissal of each of plaintiffs' claims and its denial of further leave to amend the complaint. Rolo v. City Investing Co. Liquidating Trust, 897 F. Supp. 826 (D.N.J. 1995).

The present appeal is from the district court's decision on remand. Plaintiffs assert that the district court erred in dismissing their RICO claims and abused its discretion by denying them leave to amend their complaint. We conclude that there were adequate grounds to dismiss each of plaintiffs' RICO claims and that the district court did not abuse its discretion by denying plaintiffs further leave to amend their complaint. Accordingly, we will affirm the district court's decision on remand in its entirety.

I. BACKGROUND

A. The Fraudulent Scheme

Plaintiffs allege that GDC and GDV engaged in a fraudulent marketing scheme to sell real estate in violation of several federal criminal and civil statutes. The First Amended Complaint alleges that GDC improved only a small portion of the 1,000 square mile tract of land that it owned in Florida and that it had no intention of developing the land further. Prospective purchasers were told, however, that the entire tract would be developed. According to plaintiffs, GDC targeted unsophisticated purchasers, particularly those who spoke English only as a second language. Prospective purchasers were invited to attend lavish "investment seminars" at which GDC represented that the value of the real estate continually appreciated, that there was a good resale market for the lots and houses, and that the real estate was an excellent investment. The Complaint further alleges that much information was concealed from prospective purchasers, including the very low resale value of the lots, the artificial nature of the original sale prices of the lots, and the fact that most purchasers defaulted within two years, allowing GDC to cancel their contracts and resell the same lots over and over again. According to plaintiffs, similar tactics were also used to sell homes to those who already owned lots.

12

B. The Defendants

The Amended Complaint names thirty-five defendants and classifies them according to the nature of their participation in the allegedly fraudulent scheme, placing some defendants in more than one category. The district court adopted this classification and divided the defendants into six categories:[1] City Defendants, Inside Director Defendants, Director Defendants, Financing Defendants, Mortgagee Defendants and Lot Contract Defendants. The Complaint did not specifically include the lawfirm Cravath, Swaine & Moore ("Cravath") or David Ormsby, a Cravath partner, in any of these categories. The Complaint alleges that in rendering legal services to GDC and GDV, Cravath and Ormsby assisted the defendants in concealing their fraudulent scheme. Ormsby also acted as GDC's secretary from 1985-1988.

The City Defendants include City Investing Company, later City Trust, ("City"), its subsidiaries and several of its directors.[2] The Complaint alleges that City had an ownership interest in and controlled GDC. After the sales fraud was initially discovered, the City Defendants attempted to distance themselves from GDC. With the assistance of Cravath, City Investing sought to disassociate itself from GDC by transferring itself into a liquidating trust, City Trust. The City Defendants and Cravath arranged for City to sell 62% of GDC stock to the public and retain 38% in City Trust for later distribution. GDC also borrowed in excess of $100 million,[3] which was remitted to City as a dividend.

The Inside Director Defendants include Edwin Hatch, Marshall Manley, Eben Pyne and George Scharffenberger,

_____

1. The Complaint also includes a seventh group, the "John Doe" Defendants, those individuals who were involved in the alleged conspiracy but who were not known to the appellants.

2. Specifically, the City Defendants include: City Trust, George Scharffenberger, Marshall Manley, Edwin Hatch, Eben Pyne, Ambase Corp., The Home Insurance Co., Carteret Bancorp, Inc., and Carteret Savings Bank, FA.

3. It is unclear from the district court's opinion who lent this money to GDC. See Rolo, 845 F. Supp. at 204.

individuals who served as directors of GDC and City Trust for various periods from September 1985 onwards. The Director Defendants, Reubin O'D. Askew, Howard L. Clark, Jr., Charles J. Simons, and Peter R. Brinkerhoff, are persons who served as "outside directors" of GDC for various periods dating from September 1985. Also included in this category are David F. Brown and Robert F. Ehrling, who served as both officers and directors of GDC during this period. Both Brown and Ehrling were convicted of criminal charges in connection with their involvement in the fraudulent scheme. Their convictions were subsequently reversed on appeal. See infra. The Complaint alleges that the Inside Director Defendants along with the Director Defendants controlled the City Defendants and used them in furtherance of the fraudulent scheme.

The Financing Defendants include banks and financial institutions,4 who provided a variety of financial services to the other defendants. Some, for example, underwrote the $125,000,000 in notes issued by GDC in its 1988 public offering. Others loaned GDC money and extended credit to the company. Another "warehoused" new GDV mortgages until they could be pooled and sold, while also lending GDV money using these mortgages as collateral. The Complaint alleges that these defendants knew or should have known of GDC's sales fraud.

The mortgagee defendants, including the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") and a number of private institutions,5 purchased pools of mortgages on

_____

4. The First Amended Complaint lists seven entities under the heading "Financing Conspirators." These entities are: Southeast Bank, N.A., PaineWebber Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., The Prudential Insurance Company of America, Citicorp Real Estate, Inc., National Bank of Canada and First National Bank of Boston.

5. The First Amended Complaint lists nine entities under the heading of "Mortgagee Conspirators." In addition to Fannie Mae and Freddie Mac, allegations were made against the following institutions: Chase Federal Bank, FSB, Citizens and Southern Trust Co., N.A. n/k/a NationsBank Trust Co., Secor Bank, FSB n/k/a Regions Bank of Louisiana, The Home Insurance Co., Carteret Bancorp, Inc., Carteret Savings Bank, FA and Prudential. The FDIC also appeared as successor to the Resolution Trust Corporation in its capacity as receiver of Carteret Savings Bank, FA.

GDC houses. The Complaint alleges that these defendants knew or recklessly disregarded information that the GDC mortgages were overvalued. The Complaint also alleges that Fannie Mae and Freddie Mac stopped purchasing GDV mortgages in 1985 because GDV's practices did not meet their standards, but that these defendants permitted GDV to repurchase the mortgages through a confidential agreement. In addition, they did not strip GDV of its privileges to sell mortgages under the Federal Home Mortgage Act.

The Lot Contract Defendants,[6] purchased pools of monthly payments due to GDC from the sale of residential property in Florida. Some of these defendants authorized GDC to service their contracts, including collection from and negotiations with the lot owners. Others collected their payments from owners directly. Under GDC's agreements with these defendants, substitution pools were used as a security. When a contract or note went into default, GDC would replace it with a performing contract. Thus, these defendants incurred no losses from defaults and had no incentive to ensure that loans reflected the true value of the property. The Complaint alleges that these defendants had conducted extensive financial review of GDC and knew or should have known of GDC's fraudulent scheme, but chose to remain silent in order to protect their own interests.

The defendants must also be divided into two additional categories, the primary and secondary defendants. The primary defendants are those defendants who, plaintiffs allege, participated in the operation and management of the affairs of GDC through a pattern of racketeering activity. The primary defendants are City Trust, George Scharffenberger, Marshall Manley, Edwin Hatch, Eben Pyne, David F. Brown, and Robert F. Ehrling. All of the remaining defendants are categorized as secondary

_____

6. The Lot Contract Defendants include the following entities: Oxford First Corp. and the Oxford Finance Companies, Inc., Greyhound Financial Corporation, StanChart Business Credit, Inc., Lloyds Bank, PLC, Harbor Federal Savings and Loan Association, Merrill Lynch, Pierce, Fenner & Smith, Inc., National Bank of Canada, Citicorp Real Estate, Inc. and First National Bank of Boston.

defendants, who, it is alleged, aided and abetted the pattern of racketeering activity devised and controlled by the primary defendants. The plaintiffs allege that the actions of the secondary defendants are also in violation of RICO.

C. Procedural History

Plaintiffs filed their original complaint on August 8, 1989, in the United States District Court for the District of New Jersey against GDC and its subsidiary, GDV, asserting claims under RICO, S 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, the Land Sales Act, various state RICO statutes, and breach of fiduciary obligations. On September 7, 1989, plaintiffs filed an amended complaint, adding claims for breach of contract and fraud.

Defendants moved to dismiss the First Amended Complaint, and in January 1990 the district court dismissed the case in its entirety finding that plaintiffs had failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). Plaintiffs were given 120 days in which to file a second amended complaint. Before plaintiffs filed their amended complaint, on April 16, 1990, the case was administratively terminated because GDC had filed a petition for bankruptcy under Chapter 11.

In November 1990, plaintiffs filed the present action. As in their earlier action, plaintiffs allege that the defendants participated in a fraudulent marketing scheme in violation of several federal criminal and civil statutes. 7 Although plaintiffs listed GDC and GDV as defendants in this action, they did not serve either company with a copy of the summons or the complaint. Rolo v. General Development Corp., 949 F.2d 695, 698 (3d Cir. 1991). Plaintiffs asserted before the district court their intention "to delete all references to GDC and GDV as defendants." Rolo v. General Dev. Corp., Civ. Action No. 90-4420, slip op. at 15 (D.N.J.

_____

7. Specifically, plaintiffs assert claims under S 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. S 78j, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. S 1964, and the Interstate Land Sales Full Disclosure Act, 15 U.S.C. S 1703(a), as well as common law fraud claims. The district court had jurisdiction over the statutory claims pursuant to 15 U.S.C. S 78aa, 18 U.S.C. S 1964, and 15 U.S.C. S 1719, and exercised pendent jurisdiction over the common law claims.

16

April 26, 1990). Accordingly, neither the district court nor this Court, in its 1991 decision, treated GDC or GDV as defendants in this case. Rolo, 949 F.2d at 698.

About two weeks after the filing of this case, plaintiffs filed a proof of claim with the bankruptcy court, on behalf of all members of the NPA, a group of more than 5,000 individual who had purchased property from GDC and its agents. Id. In support of their claim, plaintiffs reiterated the allegations detailed in their complaint, which was attached to their proof of claim. Id. During the bankruptcy proceedings, the bankruptcy judge denied class treatment of plaintiffs' claims and approved settlements in which over 60,000 homesite and house purchasers participated. See In re GDC, No. 90–12231–BKC–AJC, slip op. at 1, 6 (Bankr. S.D. Fla. Aug. 16, 1991).

Proceedings in this case were stayed by the district court from December 1990 until March 1993, pending disposition of GDC and GDV's bankruptcy proceedings. Rolo , 949 F.2d at 699. In April 1991 the district court denied reconsideration of its stay order and "further directed that the action be stayed on the terms set forth in the December Order pending the resolution of the criminal cases against Brown and Ehrling."8 Id. The following month, the district court also stayed plaintiffs' request for a preliminary

_____

8. Prior to the filing of this case GDC, its Chairman David Brown, and President Robert Ehrling, were indicted for their involvement in this scheme. GDC pled guilty to fraud and established a $169 million fund to pay its customers. It also filed for bankruptcy under Chapter 11. United States v. Brown, 79 F.3d 1550, 1555 (11th Cir. 1996). A civil action has also been brought by the United States against GDC. No. 90–0879–Civ. Nesbitt (S.D. Fla.). For their participation in the scheme, Brown and Ehrling were charged with 73 total counts of mail fraud, interstate transportation of persons in furtherance of a fraud, and conspiracy. Brown was convicted on one conspiracy count and Ehrling was convicted on 39 counts. Id. Both received jail sentences for their participation in the conspiracy. On appeal, however, the Eleventh Circuit Court of Appeals reversed their convictions finding that "insufficient evidence was presented that a scheme reasonably calculated to deceive persons of ordinary prudence and comprehension was devised." Id. at 1553. Both Brown and Ehrling are named as defendants in the action presently before this Court.

17

injunction to bar Ambase and City Investment from liquidating and distributing their assets. Id. These stay orders were the subject of the first appeal before this Court.9

On May 13, 1991, plaintiffs filed their First Amended Complaint, which no longer named either GDC or GDV as a defendant, but added a number of additional defendants. This complaint also dropped plaintiffs' claim for breach of contract. Later the same month, the defendants moved to dismiss the First Amended Complaint pursuant to Rule 12(b)(2) and 12(b)(6). In June, plaintiffs voluntarily withdrew their claims for breach of an implied covenant of good faith, negligence and negligent misrepresentation.

In their response to the defendants' Motion to Dismiss, plaintiffs first raised their challenge to the enterprise/person distinction under RICO. Although this argument raised allegations not contained in the amended complaint, the plaintiffs did not formally request further leave to amend the complaint. In considering the plaintiffs' response, the district court treated these amended RICO allegations as a Second Amended Complaint. In a lengthy Opinion and Order dated December 27, 1993, the district court granted defendant's motions to dismiss under Rule 12(b)(6), and granted the motions to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction of Scharffenberger, Manley, Hatch, Pyne, Askew, Brinkerhoff, Clark and Simons. The dismissal of all of plaintiffs' claims rendered the Motion for Class Certification moot. The court dismissed the plaintiffs' complaint without granting leave to file a further amended complaint. Plaintiffs appealed the dismissal of their claims to this Court. Following oral argument, on November 8, 1994, we issued a Judgment Order affirming the decision of the district court for

_____

9. On appeal, we held that the district court's order staying this action pending final resolution of the related bankruptcy and criminal proceedings was not an appealable order under the collateral-order doctrine. Rolo, 949 F.2d at 700. Moreover, we concluded that plaintiffs could not demonstrate exceptional circumstances sufficient to warrant the grant of mandamus relief. Id. at 702. In contrast, however, the order staying consideration of the request for preliminary injunction could be appealed interlocutorily, and the district court erred in deferring consideration of the merits of the requested injunction. Id. at 703-04.

18

"substantially the reasons" set out in the district court opinion. Rolo v. City Investing Co. Liquidating Trust, 66 F. 3d 312 (3d Cir. 1994).

On November 18, 1994, plaintiffs filed a Petition for Rehearing and Suggestion for Rehearing In Banc. Their Petition requested this Court to reconsider its jurisprudence on the person/enterprise distinction, which was applied to claims brought under RICO. See , e.g., Hirsch v. Enright Refining Co., 751 F.2d 628, 633 (3d Cir. 1984) (concluding that defendant corporation could not be liable under S 1962 in that "the `person' subject to liability cannot be the same entity as the `enterprise' "). While plaintiffs' Petition was pending, another panel of this Court decided Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258 (3d Cir. 1995), holding that under RICO, officers or employees "may properly be held liable as persons managing the affairs of their corporation as an enterprise." 46 F.3d at 261. This holding endorsed the position taken by plaintiffs in their Petition for Rehearing. By Order dated April 4, 1995, we granted plaintiffs' Petition, vacated our earlier Judgment Order, vacated the order of dismissal issued by the district court, and remanded the case to the district court for reconsideration in light of the decision in Jaguar Cars. Rolo v. City Investing Co. Liquidating Trust, No. 94-5057, 94-5058, slip op. at 2 (3d Cir. Apr. 4, 1995). We did not retain jurisdiction over the case.

Following the remand, the parties disputed whether reconsideration in light of the holding in Jaguar Cars was necessary as there were other, independent grounds to support dismissal of all of plaintiffs' claims. Plaintiffs also advised the district court that they intended to seek leave to file a further amended complaint, to add and drop parties, and to restate their claims in light of Jaguar Cars. By letter dated April 12, 1995, the district court requested briefing from the parties regarding the appropriate actions for the court to take on reconsideration. As requested by the district court, the parties filed their initial briefs on June 1, 1995. The following day, plaintiffs also served their formal motion for leave to serve a proposed Second Amended Complaint10 and to add and drop parties. By

_____

10. Although the district court had treated certain allegations contained in the plaintiffs' response to the Motion to Dismiss as a Second Amended

letter dated June 8, 1995, the district court adjourned the Motion for leave to serve an amended complaint until the court had completed the reconsideration mandated by this Court.

On August 24, 1995, the district court once again dismissed this case in its entirety, holding all other grounds for dismissing plaintiffs' claims were unaffected by Jaguar Cars. Rolo, 897 F. Supp. at 833. The district court also dismissed plaintiffs' Motion to file a Second Amended Complaint and to add and drop parties. Id. Within ten days after the court's final order, plaintiffs moved for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, seeking leave to serve their proposed Second Amended Complaint and to add and/or intervene additional parties. Following oral argument on the motion, on October 23, 1995, the district court ruled from the bench, denying relief pursuant to Rule 60(b). On November 1, 1995, plaintiffs filed their notice of appeal from the district court's decisions dismissing the complaint and denying post-judgment relief pursuant to Rule 60(b). Specifically, plaintiffs appeal from the dismissal of their RICO claims and from the denial of leave to amend the complaint.

## II. JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1291, as the appeal arises from afinal decision of the district court dismissing all of the remaining claims of the First Amended Complaint, dismissing plaintiffs' motion for leave to serve a Second Amended Complaint, and denying plaintiffs' motion, pursuant to Rule 60(b), for leave to serve a further amended complaint. The district court had subject matter jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. S 1331 and exercised pendent jurisdiction over their state claims.11

_____

Complaint, the proposed Amended Complaint would have been the Second Amended Complaint, and we will refer to it as such in this Opinion.

11. This case was filed prior to the enactment of the supplemental jurisdiction statute, 28 U.S.C. S 1367 in 1990, which combined the concepts of pendent and ancillary jurisdiction. See In re: Prudential Ins. Co. America Sales Practice Litigation Agent Actions, ___ F.3d ___, ___, 1998 WL 409156 at *11 (3d Cir. July 23, 1998).

Defendants contend, however, that we may not hear this appeal because plaintiffs did not file a timely notice of appeal. Rule 4 of the Federal Rules of Appellate Procedure provides that a notice of appeal must be filed within 30 days after the date of entry of the order appealed, but that if a party files a "timely motion" for relief under Rule 60(b), the time for appeals runs from the entry of the order disposing of the motion. In this case, the district court dismissed plaintiffs' claims on August 24, 1995. Plaintiffs moved for relief pursuant to Rule 60(b) within the 10 day time limit provided by Rule 4(a)(4)(F) of the Federal Rules of Appellate Procedure. The district court denied their Rule 60(b) Motion on October 23, 1995, and plaintiffsfiled their notice of appeal on November 1, 1995, within the 30 day time limit provided by the rule.

Defendants assert that plaintiffs' motion was not properly cognizable pursuant to Rule 60(b) and therefore the motion did not toll the time for filing a notice of appeal. Defendants argue that the Rule 60(b) Motion sought only to persuade the district court to reconsider issues that it had already fully considered and rejected. Defendants correctly state that a request for relief pursuant to Rule 60(b) cannot be used as a substitute for an appeal. Martinez–McBean v. Government of the V.I., 562 F.2d 908, 911 (3d Cir. 1977). See also Union Switch & Signal v. United Electrical, Radio & Machine Workers of America, Local 610, 900 F.2d 608, 615 (3d Cir. 1990) (finding that a party's characterization of their motion is not dispositive, instead the court must look to the "purpose the motion seeks to achieve"). In response, plaintiffs contend that they filed a Rule 60(b) Motion rather than an immediate appeal because they believed that the district court had construed this Court's mandate as precluding consideration of their Motion to file a Second Amended Complaint. Plaintiffs considered the change in the law following the original dismissal of their case coupled with the district court's narrow construction of our mandate to constitute "exceptional circumstances" meriting review pursuant to Rule 60(b)(6).

Although plaintiffs' Rule 60(b) Motion was ultimately unsuccessful, it was not so deficient that it was not cognizable pursuant to Rule 60. Plaintiffs could reasonably

believe that the district court had dismissed plaintiffs'
Request for Leave to file an amended complaint because the
district judge believed that our mandate had limited review
to the issues created by the decision in Jaguar Cars and
that a Rule 60 motion might offer broader relief. Plaintiffs'
position is buttressed by the fact that within a relatively
short time frame, controlling precedent was reversed after
the prior dismissal had been affirmed by judgment order,
but before completion of their appeal, which concluded
when the prior dismissal was vacated on rehearing.
Accordingly, plaintiffs' notice of appeal was timelyfiled and
their present appeal is properly before us.

We have plenary review over plaintiffs' appeal from the
dismissal of their action. Lorenz v. CSX Corp., 1 F.3d 1406,
1411 (3d Cir. 1993). We may review the district court's
dismissal of their motion for leave to amend the complaint
and denial of their motion for post-judgment relief under
Rule 60(b) for abuse of discretion only. In re Burlington Coat
Factory Securities Litigation, 114 F.3d 1410, 1434 (3d Cir.
1997); Resolution Trust Corp. v. Forest Grove, Inc., 33 F.3d
284, 288 (3d Cir. 1994).

III. DISCUSSION

A. Denial of Leave to Amend

Plaintiffs argue that the district court must have
misconstrued this Court's April 4, 1995, mandate
remanding the case to the district court for reconsideration
in light of the decision in Jaguar Cars because, they
contend, it refused to consider their motion for leave to
serve a Second Amended Complaint. Plaintiffs also argue
that the district court abused its discretion when it denied
their Rule 60(b) Motion seeking leave to amend. Wefind
that the district court neither misunderstood our mandate
nor abused its discretion by denying plaintiffs further leave
to amend the complaint.

Our mandate was designed to offer the district court
broad flexibility to reconsider its earlier ruling in light of
our decision in Jaguar Cars. Our April 4, 1995, Order
provided in pertinent part:

22

> The petition for rehearing is granted, the orders of the district court from which the appeal were taken are vacated, and the matters are remanded to the district court for reconsideration in light of Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258 (3d Cir. 1995). We do not retain jurisdiction.

Rolo, No. 94-5057, 94-5058, slip op. at 2. The district court was free to reconsider its original ruling, dismissing the request for leave to amend, and also to consider the new motion for leave to amend, in light of the decision in Jaguar Cars.

Plaintiffs contend that the district court thought that under this Court's mandate, it could not consider their Motion for Leave to Amend. The district court's August 24, 1995, Opinion states that plaintiffs' Motion for Leave to Amend is "dismissed." Rolo, 897 F. Supp. at 833. The court wrote, "the remand order did not contemplate that plaintiffs be allowed to reconstitute and restructure their action through the vehicle of an amended complaint and the addition and deletion of parties" and that "the motion to serve a second amended and supplemental complaint and to add and drop parties should not be considered." Id. at 827-28. On the other hand, the district court discussed the proposed amended complaint, noting that it would fundamentally alter the nature of the claims and concluding that it did "not believe that the Third Circuit intended the reconsideration to be on the basis of an amendment to an already much amended complaint." Id. at 831. The district judge did not "consider the mandate as requiring consideration of the Proposed Complaint or any other proposed amended complaint." Id. at 832. Similarly, at oral argument on plaintiffs' Rule 60(b) Motion, the Judge stated, "I concluded that the remand order did not require and the circumstances did not warrant hearing a motion for leave to file a further amended and supplemental complaint and to substitute new plaintiffs." Rolo v. City Investing Co. Liquidating Trust, No. 90-4420 slip op. at *24 (D.N.J. Oct. 23, 1995) (transcript of hearing denying plaintiffs' Rule 60(b) motion).

Under these circumstances, we conclude that the actions of the district court are consistent with this Court's

23

mandate. The court considered the impact of Jaguar Cars and determined that, in light of the procedural posture of the case, our mandate did not require that leave to amend be granted when there were other adequate grounds for upholding the decision to dismiss the complaint.

In addition, the district court did not abuse its discretion by denying plaintiffs leave to amend pursuant to Rule 15(a) or Rule 60(b)(6). Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may seek leave of the court to amend a pleading and that such leave "shall be freely given when justice so requires." The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court. Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984). The Supreme Court has stated, however, that, "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc. -- the leave sought should, as the rules require, be `freely given.' " Foman v. Davis, 371 U.S. 178, 182 (1962). The same standard applies when considering a request to add or drop parties. In contrast, relief under Rule 60(b) is extraordinary and requires a "showing of exceptional circumstances." Marshall v. Board of Education, 575 F.2d 417, 425-26 (3d Cir. 1978).

In this case, the plaintiffs' proposed Second Amended Complaint primarily seeks to replead facts and arguments that could have been pled much earlier in the proceedings. In Gasoline Sales, Inc. v. Aero Oil Company, 39 F.3d 70 (3d Cir. 1994), affirming the district court's refusal to grant leave to amend, we reasoned:

> . . . . as the district court stated, "three attempts at a proper pleading is enough" and a "plaintiff has to carefully consider the allegations to be placed in a complaint before it is filed." [Plaintiff] is not seeking to add claims it inadvertently omitted from its prior complaints or which it did not know about earlier. Rather [plaintiff] is modifying the allegations in hopes

24

> of remedying factual deficiencies in its prior pleadings,
> even to the point of contradicting its prior pleadings.

Id. at 74. This description is equally applicable to the procedural posture of this case. Plaintiffs have not only had the opportunity to file an amended complaint, but the district court also accepted certain allegations contained in their response to defendants' motion to dismiss as a Second Amended Complaint. Plaintiffs have already had ample opportunity to plead their allegations properly and completely.

The duration of this case, and the substantial effort and expense of resolving defendants' Motion to Dismiss the First Amended Complaint also support the district court's denial of leave to amend. Although the district court did not make specific factual findings on this question, these factors could constitute undue delay, bad faith or prejudice to the defendants. See Adams v. Gould, 739 F.2d 858, 863-64 (3d Cir. 1984). Finally, in our Judgment Order of November 8, 1994, which was later vacated, we ruled that the district court had not erred in denying plaintiffs leave to amend. Rolo v. City Investing Co. Liquidating Trust, Nos. 94-5057, 94-5058, slip op. at 2 (3d Cir. Nov. 8, 1994). Because the new legal analysis established in Jaguar Cars does not form the basis for plaintiffs' requested amendments, the district court did not abuse its discretion by summarily dismissing plaintiffs' renewed Motion for Leave to Amend.

B. Statute of Limitations

In its original opinion dismissing this case, the district court concluded that plaintiffs' RICO claims against the primary defendants could not survive because plaintiffs had "failed to plead that the RICO `persons' (GDC's officers, directors and controlling shareholders) were separate and distinct from the `enterprise' (GDC)." Rolo, 897 F. Supp. at 832. In the alternative, the district court found that these claims could also be dismissed on the grounds that they were time barred. Id. Plaintiffs' aiding and abetting claims under RICO were dismissed because they did not meet the "operation or management" test of Reves v. Ernst & Young, 507 U.S. 170 (1993), and for "failure to plead anything more than general and conclusory allegations of knowledge

25

or participation in a scheme." Rolo, 897 F. Supp. at 833. Following our decision in Jaguar Cars, the enterprise/person distinction no longer constituted a grounds for dismissing their RICO claims against the primary defendants. The district court found that other, independent reasons supported dismissal of all plaintiffs' RICO claims. The court concluded that plaintiffs' RICO claims could be dismissed as to all defendants on the grounds that they were not timely filed. Rolo, 897 F. Supp. at 833. In addition, the grounds for the dismissal of the aiding and abetting claims against the secondary defendants were unaffected by the decision in Jaguar Cars. Id.

Although RICO does not contain an express statute of limitations for civil actions, the Supreme Court has held that RICO claims are subject to the four year statute of limitations applicable to civil enforcement actions under the Clayton Act, 15 U.S.C. S 15b. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 152-56 (1987). Accordingly, to be timely, plaintiffs' claims can have accrued no earlier than November 8, 1986, for the claims contained in the original complaint and May 13, 1987, for those claims contained in the First Amended Complaint.

At the time plaintiffs filed both their original complaint and their First Amended Complaint, this Court recognized the "last predicate act" method for calculating the accrual of civil RICO claims. Under the "last predicate act" method of accrual:

> Civil RICO claims accrue at the time when the plaintiff knew or should have known that the elements of a civil RICO action existed. However, if further predicate acts occur that are part of the same pattern of racketeering, regardless of whether they injure the plaintiff or if the plaintiff suffers further injury from a predicate act that is part of the same pattern of racketeering, even if that predicate act occurred outside the limitations period, the statute of limitations begins to run from the date that the plaintiff knew or should have known of the last such act or the last such injury.

Davis v. Grusemeyer, 996 F.2d 617, 623 (3d Cir. 1993) (citation omitted). Relying in part upon this accrual

26

method, plaintiffs contend that the district court erred in concluding that their RICO claims were not timely filed.

During the pendency of this appeal, the Supreme Court held that the last predicate act accrual method was not a proper interpretation of the RICO statute of limitations. Klehr v. A.O. Smith Corp., 117 S. Ct. 1984 (1997). The Court declined, however, to determine which of the remaining accrual methods is the appropriate one.

The accrual method that provides plaintiffs with the longest period of time in which to file their claims is the "injury and pattern discovery" method, which has also been applied in this Circuit. See Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1130 (3d Cir. 1988). Under this method, plaintiffs have four years in which to file suit from the time that they discover or should have discovered either their injury or the defendants' pattern of racketeering activity.

Given that plaintiffs purchased their properties in the 1970s, it seems likely that they should have discovered the defendants' allegedly fraudulent activities prior to 1986 or 1987, when their complaints were filed.12 We will not, however, address this issue directly as other adequate grounds exist for dismissing the plaintiffs' RICO claims.

C. Aiding and Abetting Liability

The claims against the vast majority of defendants are secondary claims, contentions that these defendants assisted the primary defendants in defrauding the plaintiffs. The district court dismissed the complaint as to these defendants, because the plaintiffs had failed to plead that the alleged aiders and abettors had "participated in the operation or management" of the alleged enterprise, as required by the Supreme Court's decision in Reves v. Ernst

_____

12. In addition, plaintiffs' claim that they could not have discovered their claims due to the fraudulent concealment of the defendants is unavailing. In Klehr, the Court clarified that in order to use fraudulent concealment to toll the statute of limitations, plaintiffs must have been reasonably diligent in protecting their interests. 117 S. Ct. at 1993. Whether or not plaintiffs should have discovered their claims prior to 1986, there is no evidence that plaintiffs were reasonably diligent in supervising the defendants' actions with regard to their property.

& Young, 507 U.S. 170, 183 (1993). Rolo, 897 F. Supp. at 829. The district court also found that had the allegations of the Amended Complaint satisfied the Reves requirement, these allegations would be insufficient because they fail to meet the essential pleading requirements for aiding and abetting claims and are barred by RICO's four year statute of limitations. Id. (citing Walck v. American Stock Exchange, Inc., 687 F.2d 778, 791 (3d Cir. 1982)). We will affirm the district court's dismissal of the plaintiffs' RICO aiding and abetting claims without reaching either of the district court's grounds for dismissing these allegations because we are convinced that a private cause of action for aiding and abetting a RICO violation cannot survive the Supreme Court's decision in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994).

In Central Bank, the Supreme Court addressed the question of whether a private plaintiff may bring a cause of action for aiding and abetting under the Securities Exchange Act of 1934, S 10(b). The Court's analysis began and ended with a review of the language of the statute. "It is inconsistent with the settled methodology inS 10(b) cases to extend liability beyond the scope of conduct prohibited by the statutory text." Id. at 177. Reasoning that the text of S 10(b) does not reach aiding and abetting a violation of S 10(b), the Court concluded that "the statute itself resolves the case." Id. at 177–78. The Court rejected the argument that Congress had intended to permit private actions for aiding and abetting, stating "Congress knew how to impose aiding and abetting liability when it chose to do so." Id. at 176. The Court explained,

> Congress has not enacted a general civil aiding and abetting statute . . . .. [W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors.

Id. at 181. The Court refused to entertain arguments based upon reference to general tort principles or the policy considerations supporting inference of a Rule 10b–5 aiding and abetting cause of action. Id. at 181, 188.

28

The Court also rejected the argument that a private cause of action for aiding and abetting in violation of S 10(b) could be implied by reference to 18 U.S.C. S 2, the criminal aiding and abetting statute. The Court wrote,

> [W]hile it is true that an aider and abettor of a criminal violation of any provision of the 1934 Act, including S 10(b), violates 18 U.S.C. S 2, it does not follow that a private civil aiding and abetting cause of action must also exist. We have been quite reluctant to infer a private right of action from a criminal prohibition alone . . ..

Id. at 190. Thus, the Court concluded that because the text of S 10(b) itself does not prohibit aiding and abetting, a private plaintiff may not maintain a suit for aiding and abetting in violation of S 10(b).

We conclude that the same analysis controls our construction of the civil RICO provision, 18 U.S.C.S 1964. Section 1964(c) establishes a civil remedy in favor of "[a]ny person injured in his business or property by reason of a violation of section 1962." Like S 10(b), the text of S 1962 itself contains no indication that Congress intended to impose private civil aiding and abetting liability under RICO. Criminal liability for aiding and abetting a violation of S 1962 is imposed by reference to the general aiding and abetting statute, 18 U.S.C. S 2. This provision has no application to private causes of action. See Central Bank of Denver, 511 U.S. at 181–82. Thus, reference to 18 U.S.C. S 2 cannot provide the basis for the imposition of civil liability for aiding and abetting a RICO violation.

Similarly, despite the existence of cogent policy arguments in support of extending civil liability to aiders and abettors of RICO violations, under Central Bank of Denver, we must "interpret and apply the law as Congress has written it, and not [ ] imply private causes of action merely to effectuate the purported purposes of the statute." In re Lake States Commodities, Inc. 936 F. Supp. 1461, 1475 (N.D. Ill. 1996). Because the text of the RICO statute does not encompass a private cause of action for aiding and abetting a RICO violation, "in accordance with the policies articulated in Central Bank of Denver", we have no

authority to imply one. Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison, 955 F. Supp. 248, 255-56 (S.D.N.Y. 1997); see also In re Lake States, 936 F. Supp. at 1475-76; Department of Economic Dev. v. Arthur Anderson & Co., 924 F. Supp. 449, 475-77 (S.D.N.Y. 1996). On this basis, we will affirm the district court's dismissal of the RICO claims against all of the secondary defendants.

We reach this result despite our discussion of aiding and abetting liability in Jaguar Cars, a case decided after Central Bank of Denver. See 46 F.3d at 270. In Jaguar Cars, the opinion did not address the impact of Central Bank of Denver on earlier cases that had recognized a private cause of action for aiding and abetting under RICO. The decision in Jaguar Cars focused on whether there had been sufficient evidence to find the defendant liable for aiding and abetting a RICO violation. See 46 F.3d at 270. The parties did not challenge the existence of a cause of action for aiding and abetting, and we did not raise the issue sua sponte. Although, under this Court's Internal Operating Procedures, we are bound by, and lack the authority to overrule, a published decision by a prior panel, see I.O.P. 9.1, we conclude that the discussion of a private cause of action for aiding and abetting a RICO violation in Jaguar Cars does not control our analysis in this case. The decision in Central Bank of Denver was not called to the attention of the panel in Jaguar Cars, and the panel's opinion neither explicitly nor implicitly decided the impact of Central Bank of Denver on the continued availability of a private cause of action for aiding and abetting a RICO violation.

D. Failure to Plead Fraud with the Requisite Particularity

The Amended Complaint alleges that the primary defendants, those defendants who actually participated in the operation and management of the fraudulent scheme, committed mail and wire fraud as predicate racketeering acts. Because the Complaint alleges that these defendants participated in the operation or management of the racketeering enterprise, the allegations against the primary defendants conform with the requirements for liability under RICO established by Reves v. Ernst & Young. Originally, the district court dismissed these claims for

failure to plead that the RICO "persons" were separate and distinct from the RICO "enterprise." Rolo, 897 F. Supp. at 829. Following the decision in Jaguar Cars, the district court reaffirmed its dismissal of these claims against the primary defendants, finding that they were time barred. Id. at 833. We will affirm the dismissal of these claims without reaching the statute of limitations question because plaintiffs' allegations fail to satisfy the pleading requirements established by Fed. R. Civ. P. 9(b).

Rule 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Thus, under Fed. R. Civ. P. 9(b), plaintiffs must plead with particularity the "circumstances" of the alleged fraud. They need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984). The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Id. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants. See Christidis v. First Pennsylvania Mortg. Trust, 717 F.2d 96, 99 (3d Cir. 1983).

In Seville, the plaintiff met this standard because the subject and nature of each alleged misrepresentation was adequately plead. 742 F.2d at 791. We found that,

> Seville adequately satisfied the requirements of Rule 9(b) by incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud . . .. The Complaint sets forth the nature of the alleged misrepresentations, and while it does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation.

31

Id. In contrast, in Saporito v. Combustion Engineering, 843 F.2d 666 (3d Cir. 1988), cert. granted and judgment vacated on other grounds, 489 U.S. 1049 (1989), the plaintiffs failed to satisfy this standard. The plaintiffs' complaint alleged that ". . . defendants and/or persons under their direction or control provided notice to certain C-E employees other than plaintiffs during the [options period], that C-E was in the process of planning and promulgating [a Voluntary Separation Incentive Plan]." Id. at 673. This Court held that their Complaint was deficient because it did not adequately allege who made the statements ("defendants and/or persons under their direction or control") or who received the allegedly fraudulent information ("certain C-E employees other than the plaintiffs"). Id. at 675.

In this case, plaintiffs have alleged numerous misrepresentations, and the fraudulent scheme is described in some detail. For example, the Complaint alleges that "[d]uring standard sales presentations, the moderators acting for GDC would misrepresent the supply, demand and value of the lots" by stating that the prices for the lots would increase the following day and that the number of lots for sale had decreased due to prior purchases. Amended Complaint at P 84. The moderators also allegedly misrepresented GDC's intentions and abilities with regard to development of the communities. Amended Complaint at PP 82-115. Similarly, the Complaint alleges that in the trips sponsored by GDC to the communities, GDC "arranged with hotel staff to screen incoming telephone calls" and to "turn away calls from independent Realtors." Amended Complaint at P 123.

While many of the allegations relating to the allegedly fraudulent scheme are quite detailed, the Complaint lacks any specific allegations about the presentations made to any of the named plaintiffs. The Complaint includes no information about the actual presentations made to either the Rolos or the Tenerellis, including who made the presentation, when it took place, or with reference to what property it was made. The same is true with regard to the allegedly fraudulent mailings. The content of the mailings is described in reasonably specific terms, but when, by whom, and to whom a mailing was sent, and the precise content

of each particular mailing are not detailed. The Complaint also includes some general allegations such as, "[a]t the time plaintiffs purchased their Lots, when they purchased houses from GDC, and thereafter, the material facts alleged in paragraphs 87 and 138 herein were unknown to them and were actively concealed from them by the defendants." Amended Complaint at P 143. It remains unclear, however, who misrepresented and concealed the information, when and how. For example, plaintiffs allege that GDC concealed its fraud through a Customer Service Office. It is unclear from the Complaint, however, whether the Rolos or Tenerellis ever contacted this office. The Complaint only alleges what happened to "most purchasers," "the vast majority of complaints" and what happened "typically." Amended Complaint at P 145.

Under Rule 9(b), failure to plead fraud with particularity with respect to what happened to a specific plaintiff prevents the defendants from being able to prepare a defense as to this particular allegation of fraud. To link their own injuries to the alleged RICO enterprise, plaintiffs must allege what happened to them. At the least, this includes specific allegations as to which fraudulent tactics were used against them and should include some allegations of what was said to them to induce them to purchase their properties from GDC. Although the First Amended Complaint links the Rolos and Tenerellis to the scheme in a general way, as purchasers of GDC properties, the manner in which the fraudulent scheme allegedly caused them injury has not been adequately pled. Plaintiffs appear to have confused this complaint with a class action complaint.13 The class must, however, be certified before it may become a class action. Until the putative class is certified, the action is one between the Rolos, the Tenerellis and the defendants. Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs. Because the Complaint fails to allege what actually happened to either the Rolos or the Tenerellis,

_____

13. For example, in one of the paragraphs alleging mail fraud, many individuals are listed as plaintiffs, including "Paul and Agnes Duncan." Amended Complaint at P 396. Paul and Agnes Duncan are not parties to this case.

33

plaintiffs have not pled fraud with the specificity required by Rule 9(b), and the district court's dismissal of their complaint as to the primary defendants will be affirmed on this basis.14

CONCLUSION

The district court did not abuse its discretion by denying plaintiffs leave to amend their complaint when they had already had ample opportunity to plead their claims fully. Nor did the district court err in dismissing plaintiffs' RICO claims. The claims against the secondary defendants, alleging liability for aiding and abetting a RICO conspiracy, cannot survive the Supreme Court's decision in Central Bank of Denver. Plaintiffs' claims against the primary defendants also fail because their allegations are not pled with the particularity required by Rule 9(b). Accordingly, we will affirm the district court's dismissal of this case in its entirety.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

14. Because plaintiffs have already had ample opportunity to plead their allegations fully and in the proper form, we will not remand this case to the district court in order to provide them with a further opportunity to amend their defective complaint. Cf. Saporito, 843 F.2d at 675–76 (remanding in order to provide plaintiffs with the opportunity to amend their complaint to provide greater specificity).

34