76 F.Supp.2d 531 (1999)
IN RE CENDANT CORPORATION SECURITIES LITIGATION.
This document relates to:
Daystar Special Situations Fund L.P. and Daystar LLC, Plaintiffs,
v.
Cendant Corporation, Henry R. Silverman, and Martin L. Edelman, Defendants.
No. CIV. 98-1664.
United States District Court, D. New Jersey.
November 29, 1999.
*532 Melvin Brosterman, James Bernard, Strook & Strook & Lavin, LLP, New York, NY, for Daystar Special Situations Fund, L.P., and Daystar LLC.
Carl Greenberg, Michael Rosenbaum, Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., Short Hills, NJ, Johnathan J. Lerner, Samuel Kadet, Skadden, Arps, Slate Meagher & Flom LLP, New York, NY, for Cendant Corporation and Cendant Capital I.
Herbert J. Stern, Stephen M. Greenberg, Joel M. Silverstein, Stern & Greenberg, Roseland, NJ, James G. Kreissman, Jacob S. Putman, Lauren J. Rosenblum, Simpson Thacher & Bartlett, New York, NY, for Henry R. Silverman and Martin L. Edelman

OPINION
WALLS, District Judge.
This matter is before the Court on the motions of defendants Henry R. Silverman and Martin Edelman ("Individual Defendants") and defendant Cendant Corporation ("Cendant") to dismiss the complaint against them filed by Daystar Special Situations Fund, LP and Daystar LLC ("Daystar"). Having heard oral argument on November 23, 1999, defendants' motions are denied.

Factual Background[1]
Cendant Corporation ("Cendant") was formed by the merger of CUC International, Inc. ("CUC") and HFS Incorporated ("HFS") on December 17, 1997. In the merger, holders of HFS common stock were issued shares of CUC common stock pursuant to a Registration Statement dated August 28, 1997 and a Joint Prospectus. Because CUC was the surviving corporation, *533 CUC shareholders did not exchange their stock as part of the merger. CUC was renamed "Cendant" after the merger.
Daystar LLC is an investment management firm organized to manage certain assets of state pension funds, individuals, corporations and endowments. Daystar Special Situations Fund is a hedge fund organized under the laws of Delaware. Plaintiffs allege that on April 25, 1998, Michael Murr, a principal of Daystar, met with Martin Edelman, a director of Cendant. They claim that Edelman told Murr that Cendant's April 15, 1998 press release ("April press release") accurately disclosed the scope of the company's problems. Based on this statement, plaintiffs purchased 2,170,000 shares of Cendant common stock on April 27th and 28th. And, on May 1, 1998, plaintiffs assert that several Daystar principals met with Edelman and Henry R. Silverman, Cendant's Chief Executive Officer, who reassured them that the April press release was a correct statement as to the scope of the accounting irregularities. In particular, plaintiffs allege that Silverman stated "that he was in daily contact with the audit committee and that the full accounting report was immediately forthcoming and would confirm the amounts announced in the April 15 press release." Pl. Brf. at 17; Compl. ¶ 15. In reliance on these statements, the April press release and Cendant's first quarter earnings report issued in early May, plaintiff's purchased an additional 1,010,000 shares of Cendant common stock between May 4 and June 16, 1998.
Plaintiffs filed a complaint in the Southern District of New York which was transferred to this Court by order of the Judicial Panel on Multidistrict Litigation on August 30, 1999. Count I of Daystar's complaint asserts that defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). In Count II, Daystar asserts that defendants committed common law fraud. Plaintiffs argue that defendants committed securities fraud and common law fraud when they reassured Daystar principals that the April 15th press release represented the full scope of the company's revenue overstatements. Plaintiffs argue that "the April 15th Press Release, subsequent statements regarding 1998 income, and the statements made directly to plaintiffs in their private meetings were false at the time they were made and that plaintiffs relied upon such statements." Pl. Brf. at 12. Plaintiffs point to Cendant's disclosures in July and August 1998, which estimated that the 1997 restatement would reduce net income by $.22 to $.28 per share, more than double the amount reported on April 15, 1998. Plaintiffs also state that the Report to the Audit Committee of the Board of Directors (the "Report"), released in August 1998, confirmed that the income overstatements were five times the amount reported in April 1998.
Defendant Cendant Corporation and the Individual Defendants move to dismiss plaintiffs' complaint. The defendants' sole argument in support of dismissal is that the complaint fails to satisfy the pleading requirements of Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2). Defendants argue that plaintiffs do not and cannot allege facts that "would give rise to a strong inference that when the Individual Defendants met with plaintiffs, they knew that the [revenue] restatement would ultimately exceed the April 15 preliminary estimate." Def. Brf. at 1. They claim that "plaintiffs have relied upon boilerplate allegations of scienter" and that plaintiffs' theory of fraud is "based upon the unreasonable assumption that within a three month period, the Individual Defendants would (i) uncover and disclose the accounting irregularities at Cendant; (ii) lie to the plaintiffs about the scope of these irregularities; and (iii) subsequently recant that lie." Def. Brf. at 2.

Analysis

A. Motion to Dismiss
On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the court is required to *534 accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the nonmoving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the claimant can prove any set of facts consistent with his/her allegations that will entitle him/her to relief, not whether that person will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed.R.Civ.P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).

B. Section 10(b) and Rule 10b-5
As the Court has written, see In re Cendant Corp. Litig., 60 F.Supp.2d 354 (D.N.J.1999); see also Kennilworth Partners L.P. v. Cendant Corp., 59 F.Supp.2d 417 (D.N.J.1999); P. Schoenfeld Asset Management LLC v. Cendant Corp., 47 F.Supp.2d 546, 552 (D.N.J.1999), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities. Under Section 10(b), it is unlawful to "employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention" of any rule promulgated by the SEC designed to protect the investing public. 15 U.S.C. § 78j(b). To implement the statute, the SEC enacted Rule 10b-5, violation of which gives rise to a private cause of action. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); see also In re Cendant Corp. Litig., 60 F.Supp.2d at 367-68. That Rule makes it unlawful: (1) "[t]o employ any device, scheme, or artifice to defraud," (2) "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading," or (3) "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The Supreme Court has held that standing to bring a private cause of action under Rule 10b-5 is limited to actual purchasers or sellers of securities. Blue Chip Stamps, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539.
This tort, although statutory in origin, sounds in the common law of fraud and deceit and retains, in modified form, the common law elements of duty, breach, causation, and damage. See Huddleston v. Herman & MacLean, 640 F.2d 534, 547 (5th Cir.1981) (10b-5 claim derived from common law action for deceit), modified on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); see also In re Cendant Corp. Litig., 60 F.Supp.2d at 368-69. The plaintiff must prove knowledge by the defendant, an intent to defraud, misrepresentation or failure to disclose, materiality of the information, and injurious reliance by the plaintiff. Thomas v. Duralite Co., 524 F.2d 577 (3d Cir.1975); Rochez Bros., Inc. v. Rhoades, 491 F.2d 402 (3d Cir.1973). More precisely, these elements form the following test: To form a 10b-5 claim, a plaintiff must allege that the defendant made (1) a misstatement or an omission (2) of a material fact (3) with scienter (knowledge) (4) in connection with the purchase or sale of a security (5) upon which plaintiff reasonably relied, and (6) that reliance proximately caused injury to *535 the plaintiff. Kline v. First Western Government Sec., Inc., 24 F.3d 480, 487 (3d Cir.), cert. denied sub nom., Arvey, Hodes, Costello & Burman v. Kline, 513 U.S. 1032, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994); In re Phillips Petroleum Sec. Litig., 881 F.2d 1236, 1244 (3d Cir.1989) (citing Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 942-43 (3d Cir.), cert. denied, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985)); see also In re Cendant Corp. Litig., 60 F.Supp.2d at 368-69.

1. Scienter
Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "The purpose of Rule 9(b) is to provide notice of the `precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated charges." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998). To satisfy Rule 9(b), plaintiffs must "plead with particularity the `circumstances' of the alleged fraud." Rolo, 155 F.3d at 658. Rule 9(b) "requires plaintiffs to plead `the who, what, when, where, and how: the first paragraph of any newspaper story.'" In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)). Plaintiffs "need not, however, plead the `date, place or time' of the fraud, so long as they use an `alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Rolo, 155 F.3d at 658 (citing Seville Indus. Mach. v. Southmost Mach., 742 F.2d 786, 791 (3d Cir.1984)). The Third Circuit has cautioned that courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." Rolo, 155 F.3d at 658 (citing Christidis v. First Pennsylvania Mortg. Trust, 717 F.2d 96, 99 (3d Cir.1983)). A plaintiff who alleges securities fraud must "allege facts that give rise to a strong inference of scienter." Acito v. IMCERA Group, Inc., 47 F.3d 47, 53 (2d Cir.1995); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997). A plaintiff may establish this strong inference "`either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Burlington, 114 F.3d at 1418 (quoting Acito, 47 F.3d at 52).
The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2), specifically addresses the scienter requirement of a Section 10(b) claim. It requires that a complaint which asserts a Section 10(b) claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This scienter requirement mirrors that of the Second Circuit. See Advanta, 180 F.3d at 534; H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. 41, 41 (1995), reprinted in 1995 U.S.C.C.A.N. 740, 740; S. Rep. 98, 104th Cong., 1st Sess. 15 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 694. As the Third Circuit announced in Advanta, "Congress's use of the Second Circuit's language compels the conclusion that the Reform Act establishes a pleading standard approximately equal in stringency to that of the Second Circuit." Advanta, 180 F.3d at 534. To satisfy this pleading requirement, plaintiffs must state with particularity facts which show that defendants had both motive and opportunity to commit fraud or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. See id.; see also Burlington, 114 F.3d at 1418; Acito, 47 F.3d at 52. Recklessness, in turn, involves "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading *536 buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Advanta, 180 F.3d at 535 (quoting McLean v. Alexander, 599 F.2d 1190, 1197 (3d Cir. 1979)). Conscious behavior in this sense refers to "intentional fraud or other deliberate illegal behavior." Id.; c.f. In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 979 (9th Cir.1999) (stating that plaintiffs "can no longer aver intent in general terms ... but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent").

C. Plaintiffs' Allegations
Plaintiffs plead (1) that the April 15, 1998 press release was materially false and misleading and issued by defendants "with actual knowledge of the falsity and misleading nature of the statements and in reckless disregard for the truth;" (2) that the 1998 first quarter results were materially false and misleading because they were not free of the historical accounting irregularities; and (3) that the statements made directly to plaintiffs by Silverman and Edelman were intentionally false and misleading.
This Court previously refused to dismiss Section 10(b) claims asserted by plaintiffs who purchased Cendant stock after the April press release. See In re Cendant Corp. Litig., 60 F.Supp.2d 354, 374 (D.N.J. 1999). The plaintiffs in that action asserted that the press release was materially false and misleading because "the 1997 loss known then [in April 1998] to Cendant was over $280 million" rather than the reported reduction of between $100 and $115 million. The Court also let stand plaintiffs' Section 10(b) claims "based upon material misrepresentations and omissions in Cendant's earnings releases and financial statements for the first and second quarter of 1998." Id. Similarly, plaintiffs, here, also assert that the April press release significantly understated the actual amount of Cendant's past accounting errors. They add that in the weeks following the release, defendants personally assured them that Cendant's losses would not exceed the originally reported amount of between $100 and $115 million despite the fact that they knew the losses were in excess of this amount. They also state that statements related to expected earnings for the first quarter of 1998 contained in the April press release and other disclosures were false and misleading.
If, then, as in In re Cendant Corp. Litig., 60 F.Supp.2d 354, the Daystar plaintiffs have pled that Cendant's April statements about the expected restatement of 1997 income were false and made with reckless disregard or actual knowledge of their falsity, the Section 10(b) claim cannot be dismissed. Further, if plaintiffs have adequately pled that the April press release and a May 5, 1998 first quarter earnings release recklessly or intentionally misstated 1998 earnings, their securities fraud claim cannot be dismissed.[2] Finally, if plaintiffs can demonstrate that either or both of the above releases were fraudulently issued, statements made by the Individual Defendants in support of the accuracy of these releases may also have been made with the required level of fraudulent intent.
As explained, a plaintiff who alleges securities fraud must "allege facts that give rise to a strong inference of scienter." Acito v. IMCERA Group, Inc., 47 F.3d 47, 53 (2d Cir.1995); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997). A plaintiff may establish this strong inference "`either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute *537 strong circumstantial evidence of conscious misbehavior or recklessness.'" Burlington, 114 F.3d at 1418 (quoting Acito, 47 F.3d at 52).

1. Circumstantial Evidence of Misbehavior
The complaint contains four situations which plaintiffs argue constitute strong circumstantial evidence of conscious misbehavior or recklessness. First, plaintiffs allege that as of March 9, 1998, Silverman and Edelman knew of a request made by former CUC executives to move $165 million of Cendant's merger reserves into CUC business units' income statements for 1998. Compl. ¶ 28. They claim that Silverman knew this reversal was needed "in order to meet budget in 1998." Id. Second, plaintiffs allege that on March 8 or 9, 1998, the Individual Defendants learned that $144 million of CUC's non-operating income for 1997 was the result of a reversal of merger reserves. Id. Third, plaintiffs argue that as early as February 1998, Silverman and Edelman knew that Ernst & Young had challenged $23 million of CUC's January 1997 income as unsupported. Id. Fourth, shortly after these February and March discussions and disclosures, the Individual Defendants sold Cendant common stock In particular, on March 13, 1998, "Edelman sold 60,000 shares of Cendant common stock, his entire holdings, at prices exceeding $40/share." Compl. ¶ 28. According to plaintiffs, these "facts indicate actual evidence, as well as a strong inference, that defendants acted with scienter" because they "indicated that the magnitude of the fraud was potentially larger than the $100 to $115 million announced in the April 15, 1998 press release and repeatedly assured to plaintiffs during their meetings." Id.
Defendants respond that the information regarding the 1998 merger reserve reversal is inapplicable to statements which discussed 1997 earnings. Def. Brf. at 11 ("Plaintiff does not allege or even suggest that Forbes, Silverman or Edelman was told that CUC had engaged in such practices at all in 1997, let alone that they were told about the scope of such practices."); Def. Rep. Brf. at 4. Further, they argue that a reversal of merger reserves, whether for 1998 or 1997, cannot support allegations of scienter because "there is nothing legally wrong with reporting non-recurring income" and "it is appropriate to reverse merger reserves into non-recurring income when such reserves have not been fully utilized." Def. Rep. Brf. at 3-4. Additionally, defendants state that Ernst & Young explicitly told Cendant's Audit Committee that the $23 million overstatement in January 1997 was not material and would not result in any financial restatements for the month. Def. Brf. at 13. Defendants also argue that the sales of stock by the Individual Defendants are irrelevant where, as here, the sales occurred outside the relevant time period  defendants sold their stock before the April 1998 release and plaintiffs purchased after the release. Def. Brf. at 10.
The Court finds that plaintiffs have plead not only that the April 15, 1998 press release and the first quarter earnings release were false and misleading, but also that these allegedly fraudulent statements/disclosures may evidence the requisite level of scienter. Plaintiffs have identified specific events which in the aggregate constitute strong circumstantial evidence of conscious misbehavior or recklessness. Advanta, 180 F.3d at 534-35; Burlington, 114 F.3d at 1418; Acito, 47 F.3d at 52. Plaintiffs' complaint, for example, "details when the defendants sold their shares and when they and Cendant became aware of the accounting irregularities." See, e.g., In re Cendant Corp. Derivative Action Litig., 189 F.R.D. 117, 131-32 (D.N.J.1999) (to be reported at 189 F.R.D. 117) (analyzing insider trading claims asserted against HFS directors, including Silverman and Edelman); see also In re Cendant Corp. Litig., 60 F.Supp.2d 354, 374 (D.N.J.1999) (refusing to dismiss Section 10(b) claims *538 asserted by purchasers of Cendant stock post-April 1998 against HFS directors).[3] Though, here, defendants' sales of securities admittedly occurred before the April press release, the sales may evidence that the Individual Defendants knew that the accounting irregularities were much larger than originally reported to the public and the Daystar principals. The sell-off of the Individual Defendants' holdings which when viewed against the history of what might otherwise be considered usual accounting practices may lead a fact finder to conclude these were fraudulent acts.
It follows, then, that the statements allegedly made to Daystar by Silverman and Edelman may reflect to the fact finder the requisite level of intent; the first allegedly fraudulent statement occurred ten days after the April press release and the second was four days before Cendant's first quarter earnings release. Both of these statements referenced the April press release and assured plaintiffs that Cendant's losses would fall within the range anticipated by the release.

2. Motive and Opportunity
In addition to circumstantial evidence of reckless or intentional misbehavior, plaintiffs assert that Cendant and the Individual Defendants had a significant motive for downplaying the impact of the April 15, 1998 press release. They plead that in mid-April, Cendant was in the middle of negotiating (1) a number of acquisitions and (2) a new term loan credit facility worth $3.25 billion. They charge that defendants induced plaintiffs to purchase stock and "artificially support[ed] [Cendant's] stock price in order to continue acquiring other companies and in order to improve their position in their negotiations with Chase [for the loan]." Pl. Brf. at 5; Compl. ¶ 9.
Defendants argue that boilerplate allegations that a company acted to inflate its stock price to complete acquisitions or refinance debt are insufficient to demonstrate scienter. See Thacker v. Medaphis Corp., No. 97-2849, 1998 WL 684595, at *3 (S.D.N.Y. Sept.30, 1998) (stating that the "aggressive acquisition of related companies" was an insufficient motive to support allegations of fraud). They maintain that plaintiffs have not met their burden of pleading "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir.1994). Defendants add that two of the three acquisitions (Providian and National Parking) were to be cash transactions, thus plaintiffs' allegation that defendants inflated the value of Cendant stock "so that the stock [could] be used, at artificially high prices, to cover the costs of a deal" is inapplicable to these acquisitions. Further, the other acquisition (ABI), though a stock-for-stock transaction, was conditioned on the completion of Cendant's financial restatements and would not have taken place until the fourth quarter of 1998. Def. Rep. at 12-13. Whether such was so will be determined at trial.
As the Court has determined that plaintiffs have satisfied Rule 9(b) and the PSLRA by pleading circumstantial evidence of recklessness or actual wrongful conduct, it need not address these allegations of motive and opportunity to commit securities fraud.

Conclusion
Defendants' motions to dismiss the complaint for failure to satisfy pleading standards of Fed.R.Civ.P. 9(b) and the PSLRA are denied.

*539 ORDER
This matter is before the Court on the motions of defendants Henry R. Silverman and Martin Edelman ("Individual Defendants") and defendant Cendant Corporation ("Cendant") to dismiss the complaint against them filed by Daystar Special Situations Fund, LP and Daystar LLC ("Daystar"). Having heard oral argument on November 23, 1999, considered the parties' submissions, and for good cause shown,
It is on this 29th day of November, 1999,
ORDERED that defendants' motions to dismiss the complaint are denied.
NOTES
[1] In re Cendant Corp. Litigation, 182 F.R.D. 144 (D.N.J.1998), and In re Cendant Corp. Litigation, 60 F.Supp.2d 354 (D.N.J.1999), provide a full factual and procedural history of this litigation.
[2] Neither party argues that any statements in the April press release are forward-looking statements which qualify for safe harbor treatment under the PSLRA. 15 U.S.C. § 78u-5; see Cendant, 60 F.Supp.2d at 375 (addressing potential forward-looking statements in the April press release).
[3] In In re Cendant Corp. Derivative Action Litig., 189 F.R.D. at 131-32, this Court examined similar pleadings  of unusual sales in February and March 1998 by Silverman and Edelman, of their knowledge of a $23 million overstatement in January 1997, and of "inappropriate accounting adjustments" discussed with Silverman and Edelman in meetings held between March 6-9, 1998  and concluded that they "raised a strong inference of scienter."