

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2000

# Pennsylvania Ass. Edwards Heirs v. Rightenour

Precedential or Non-Precedential:

Docket 00-3189

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Pennsylvania Ass. Edwards Heirs v. Rightenour" (2000). *2000 Decisions.* Paper 252.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/252

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3189

PENNSYLVANIA ASSOCIATION OF EDW ARDS HEIRS, a
Pennsylvania non-profit corporation,

     Appellant,

v.

DAVID PAUL RIGHTENOUR; HELEN RIGHTENOUR;
DOUGLAS WAYNE EDWARDS; DUDLEY CAROL
EDWARDS; ELEANOR LONGENECKER; BONNIE BLACK
PARSONS; DON WUBE, individually d/b/a "Basic";
WACHOVIA BANK OF GEORGIA, successor in inter est to
First National Bank of Atlanta, formerly the North Georgia
Savings & Loan Association, formerly North Georgia Bank;
WACHOVIA HOLDING CORP., a Geor gia Corporation;
CAPITA RECOVERY SPECIALISTS; FIS VIDEO; FINANCIAL
INVESTMENT SERVICES, INC.; DISCOUNT EXPRESS;
MID-ATLANTIC PHONE ASSOCIATES; THE GRACE
BAPTIST TABERNACLE; RIGHTENOUR & WEYANDT
LUMBER COMPANY, INC.; YOUNG, OAKES BROWN CO.,
a professional corporation.

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: Donald E. Ziegler
(D.C. Civ. No. 93-275 J)

Argued October 24, 2000

Before: BECKER, Chief Judge, SCIRICA and FUENTES,
Circuit Judges.

(Opinion Filed: December 14, 2000)

John P. Smarto (argued)
329 West Otterman Street
Greensburg, Pennsylvania 15601
Attorney for Appellant

Richard Wile (argued)
Wile & Norkus
2704 Gulf Tower
Pittsburgh, Pennsylvania 15219
Attorneys for Appellee

OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellant Pennsylvania Association of Edwards Heirs ("the Association") appeals from a grant of summary judgment dismissing its complaint, which alleged that Wachovia Bank of Georgia ("W achovia Bank") aided and abetted in the commission of a RICO violation. In Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998), we extended the Supreme Court's r easoning in Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164 (1994), to RICO, and held that, because RICO's statutory text does not provide for a private cause of action for aiding and abetting and 18 U.S.C. S 2 cannot be used to imply this private right, no such cause of action exists under RICO. Appellant argues that our holding in Rolo leaves open the possibility that a civil aiding and abetting RICO claim could be recognized as a common law civil remedy. We disagree, and hold that Rolo's holding extends as well to common law-based RICO civil aiding and abetting claims. Therefore, we will affirm.

I.

The Association is a non-profit corporation dedicated to pursuing a proper settlement of the ancient estate of a Welsh seaman, Robert Edwards, who allegedly owned a significant portion of lower Manhattan, including some areas in Wall Street, that never passed to his rightful heirs. This claim dates back to the initial Dutch and British

settlers who formed a colony in lower Manhattan, well before the nation's founding. The Association raised funds through membership contributions by 3,200 prospective heirs, who each paid $450 to buy an equal share of the professed $24 billion estate. The Association raised a large portion of its membership contributions between 1983 and 1985 when former officers solicited alleged heirs.

By the spring of 1988, the Association discovered that some of its former officers had depleted all of the membership fees for unintended purposes. After electing new officers, the Association began an effort to trace and recoup the money. They discovered that the most significantly involved financial institution was the North Georgia Savings and Loan Association, a predecessor to Wachovia Bank, in which over $300,000 in membership fees had been deposited between 1984 and 1986. The Association contended that Wachovia Bank had aided and abetted the Association's former officers with misappropriating membership funds in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. SS 1962(b), (c), and (d). Specifically, the Association claimed that Wachovia Bank had aided and abetted RICO predicate acts of mail and wire fraud in violation of 18 U.S.C. SS 1341 and 1343, and further conspired to commit money laundering and the laundering of monetary instruments contrary to 18 U.S.C. SS 1956 and 1957.

According to the Association, its vice-president at the time, a local Baptist preacher named Douglas Wayne Edwards, had a close and personal relationship with the financial institution's president. The Association alleged that Edwards and the Association's treasurer, David Paul Rightenour, wrongly applied for, and received, personal loans from Wachovia Bank's predecessor by using as collateral certificates of deposit belonging to the Association. Allegedly, when Edwards and Rightenour defaulted on the loans, Wachovia Bank's predecessor improperly cashed the certificates and used the proceeds to satisfy any outstanding loan debt. In addition, the Association claimed that $50,000 of a cashed certificate, the proceeds of which were at least partly paid over to

3

Edwards, remained unaccounted. In sum, the Association alleged that Wachovia Bank allowed itself to be used as a conduit by aiding and abetting the fraudulent schemes of its former officers, resulting in the dissipation of nearly $1.5 million in membership contributions.

After having unsuccessfully applied for summary judgment on timeliness grounds, Wachovia Bank filed a second summary judgment motion arguing that the Association's claim against it was barred because no private cause of action exists under RICO for aiding and abetting. This argument was based on a case we decided during the course of the litigation, Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir . 1998), which extended the Supreme Court's reasoning in Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164 (1994).

In Central Bank, 511 U.S. at 177, 191, the Supreme Court had ruled that private aiding and abetting suits were not authorized by S 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. S 78j. In Rolo, 155 F .3d at 656-57, we applied similar reasoning in the RICO context, ruling that a private plaintiff could not maintain a claim of aiding and abetting an alleged RICO violation. The Association responded by relying upon Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258 (3d Cir . 1995), which had been decided after Central Bank, but befor e Rolo, and dealt with a RICO aiding and abetting claim on the merits. The Association argued that a conflict exists in this circuit between Jaguar Cars and Rolo, which should be resolved by rejecting Rolo.

In an order entered March 22, 1999, the District Court concluded that Rolo was controlling and granted summary judgment in favor of Wachovia Bank. The Court further opined that, to the extent a conflict existed, we would have to resolve it.

II.

Our review of a grant of summary judgment is plenary, and the record is judged by the same standard district courts use. Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir.

4

1999). Federal Rule of Civil Procedure 56 governs summary judgment motions. Subsection 56(c) provides, in part, that:

> [t]he judgment sought shall be render ed forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Doherty v. Teamsters Pension T rust Fund, 16 F.3d 1386, 1389 (3d Cir. 1994).

III.

A.

Prior to Central Bank, private aiding and abetting claims relating to S 10(b) of the Securities Exchange Act were widely thought to be legitimate.

> In hundreds of judicial and administrative proceedings in every Circuit in the federal system, the courts and the SEC have concluded that aiders and abettors are subject to liability under S 10(b) . . . . While we have reserved decision on the legitimacy of the theory in two cases that did not present it, all 11 Courts of Appeals to have considered the question have recognized a private cause of action against aiders and abettors under S 10(b) . . . .

Central Bank, 511 U.S. at 192 (Stevens, J., dissenting). However, the Supreme Court dramatically altered the landscape with its decision in Central Bank, wherein the majority ruled that, "[b]ecause the text of S 10(b) does not prohibit aiding and abetting, we hold that a private plaintiff may not maintain an aiding and abetting suit under S 10(b)." Id.

5

As the Supreme Court recognized, the judiciary had previously determined that private S 10(b) enforcement actions had been impliedly authorized from the statutory language. See id. at 171. Beyond that, however, the Court emphasized that "[w]ith respect . . . to. . . the scope of conduct prohibited by S 10(b), the text of the statute controls our decision. . . . We have r efused to allow [S 10(b)] challenges to conduct not prohibited by the text of the statute." Id. at 173. Thus, the Supr eme Court directed that "the statutory text controls the definition of conduct covered by S 10(b)." Id. at 175. Applying this paradigm, the Court wrote:

> Congress knew how to impose aiding and abetting liability when it chose to do so. If . . . Congr ess intended to impose aiding and abetting liability, we presume it would have used the words "aid" and "abet" in the statutory text. But it did not.

> We reach the uncontroversial conclusion, accepted even by those courts recognizing a S 10(b) aiding and abetting cause of action, that the text of the 1934 Act does not itself reach those who aid and abet aS 10(b) violation. Unlike those courts, however, we think that conclusion resolves the case. It is inconsistent with settled methodology in S 10(b) cases to extend liability beyond the scope of conduct prohibited by the statutory text. To be sure, aiding and abetting a wrongdoer ought to be actionable in certain instances. The issue, however, is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute.

> . . . . The [S 10(b)] proscription does not include giving aid to a person who commits a manipulative or deceptive act. We cannot amend the statute to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute.

Id. at 177-78 (citations omitted). In r eaching this holding, the majority also addressed and discounted numerous arguments, including policy considerations, that would have supported a civil aiding and abetting claim r elevant to S 10(b). See id. at 175-91.

6

B.

Several years later, in Rolo v. City Investing Co. Liquidating Trust, we affirmed the dismissal of a private plaintiff 's RICO aiding and abetting claim because we were "convinced that a private cause of action for aiding and abetting a RICO violation cannot survive the Supr eme Court's decision in [Central Bank]." Rolo, 155 F.3d at 656. After briefly reviewing Central Bank's reasoning, we concluded "that the same analysis controls our construction of the civil RICO provision." Id. at 657.

> Like S 10(b), the text of [RICO] S 1962 itself contains no indication that Congress intended to impose private civil aiding and abetting liability under RICO. . . .
>
> . . . [D]espite the existence of cogent policy arguments in support of extending civil liability to aiders and abettors of RICO violations, under [ Central Bank], we must "interpret and apply the law as Congress has written it, and not [ ] imply private causes of action merely to effectuate the purported purposes of the statute." Because the text of the RICO statute does not encompass a private cause of action for aiding and abetting a RICO violation, "in accordance with the policies articulated in Central Bank of Denver", we have no authority to imply one. On this basis, we will affirm the district court's dismissal of the RICO claims . . . .

Id. (citations omitted). We find this reasoning as fully persuasive today as when we decided Rolo, and therefore, reject the Association's argument.

In arguing for a different r esult, the Association sets forth three arguments, all of which we find unpersuasive. First, the Association submits that Central Bank's reasoning is limited to the Securities Exchange Act. However , nothing in Central Bank indicates that its reasoning is specific to the particular statute presented in that case. Rather, the majority's reasoning concerning when a private claim for aiding and abetting is available, which hinges on an analysis of statutory language, is equally applicable to RICO as well.

Second, the Association opines that Rolo is not dispositive because it is in conflict with Jaguar Cars, an earlier but post-Central Bank decision, that: (1) reiterated that aiding and abetting liability may be available under RICO, and (2) assessed that issue on the merits. See Jaguar Cars, 46 F.3d at 270. This argument lacks merit. As the Rolo panel persuasively explained, no conflict really exists. In justifying its holding that, after Central Bank, aiding and abetting liability under RICO was no longer available, the Rolo court wrote:

> [w]e reach this result despite our discussion of aiding and abetting liability in Jaguar Cars, a case decided after [Central Bank]. See 46 F .3d at 270. In Jaguar Cars, the opinion did not address the impact of [Central Bank] on earlier cases that had recognized a private cause of action for aiding and abetting under RICO . The decision in Jaguar Cars focused on whether there had been sufficient evidence to find the defendant liable for aiding and abetting a RICO violation. See 46 F.3d at 270. The parties did not challenge the existence of a cause of action for aiding and abetting, and we did not raise the issue sua sponte. Although, under this Court's Internal Operating Procedur es, we are bound by, and lack the authority to overrule, a published decision by a prior panel, see I.O.P . 9.1, we conclude that the discussion of a private cause of action for aiding and abetting a RICO violation in Jaguar Cars does not control our analysis in this case. The decision in [Central Bank] was not called to the attention of the panel in Jaguar Cars, and the panel's opinion neither explicitly nor implicitly decided the impact of [Central Bank] on the continued availability of a private cause of action for aiding and abetting a RICO violation.

Rolo, 155 F.3d at 657 (emphasis added). This reasoning is consistent with long established stare decisis principles. See Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399–400 (1821).

Finally, the Association argues that: (1) co mmon law civil principles require that a private aiding and abetting claim be recognized under RICO, and (2) various pol icy

8

arguments favor recognizing a private aiding and abetting RICO claim. We reject each of these contentions.

As to the former, acceptance of the Association's common law argument would fundamentally under mine the constrained approach to aiding and abetting liability that the Supreme Court set forth in Central Bank and which we subsequently followed in Rolo. Moreover , the common law perspective is significantly undermined, if not totally discredited, by the Supreme Court's discussion in Central Bank regarding the history of aiding and abetting liability.

> Aiding and abetting is an ancient criminal law doctrine. Though there is no federal common law of crimes, Congress in 1909 enacted what is now 18 U.S.C. S 2, a general aiding and abetting statute applicable to all federal criminal offenses. The statute decrees that those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime.
>
> . . . .
>
> . . . Congress has not enacted a general civil aiding and abetting statute--either for suits by the Government (when the Government sues for civil penalties or injunctive relief) or for suits by private parties. Thus, when Congress enacts a statute under which a person may sue and recover damages fr om a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors.
>
> Congress instead has taken a statute-by-statute approach to civil aiding and abetting liability.

Central Bank, 511 U.S. at 181-82 (emphasis added and citations omitted). The Supreme Court's language makes it abundantly clear that, in the absence of statutory authorization, there is no presumption in favor of recognizing a civil aiding and abetting claim. Therefore, we must reject the Association's argument that, under common law principles, a civil aiding and abetting claim must be recognized with respect to RICO.

With regard to the policy ar guments, Central Bank instructs that they are of no avail to the Association unless an unacceptably aberrant result would entail."Policy considerations cannot override our interpretation of the text and structure of the Act, except to the extent that they may help to show that adherence to the text and structure would lead to a result `so bizarre' that Congress could not have intended it." Central Bank, 511 U.S. at 188 (quoting Demarest v. Manspeaker, 498 U.S. 184, 191 (1991)). The Association is unable to identify any such "bizarre" consequences of any merit. Thus, the controlling issue "is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute." Central Bank , 511 U.S. at 177. In Rolo, we answered that inquiry in the negative with respect to the RICO statute. We accordingly adhere to our prior decision.

IV.

For the reasons explained above, we will affirm the District Court's order.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

10