In re SUNPOINT SECURITIES, INC., Debtor.

Securities Investor Protection Corporation and Robert G. Richardson, Trustee of the Estate of Sunpoint Securities, Inc., Plaintiffs

v.

City National Bank, Defendant.

Bankruptcy No. 99–6073.
Adversary No. 01–6079.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

April 17, 2006.

Michael L. Knapek, Emily Donahue, and Jeffrey G. Hamilton, Jackson Walker, LLP, Dallas, TX, for Plaintiff, Robert G. Richardson, Trustee.

Tom Henson, Deron Dacus, Ramey & Flock, P.C., Tyler, TX, for Plaintiff, Securities Investor Protection Corporation.

Jeffrey A. Hage, W. Mike Baggett, and David F. Johnson, Winstead, Sechrest & Minick, P.C., Dallas, TX, Michael A. McConnell, Kelly Hart & Hallman, Fort Worth, TX, and Glenn D. Phillips, Phillips & Gilchrist, L.L.P., for Defendant, City National Bank.

## *MEMORANDUM OF DECISION*

BILL PARKER, Chief Judge.

Now before the Court in the above-referenced adversary proceeding is "Defendant City National Bank's Motion for Partial Summary Judgment as to Plaintiffs' RICO Claims" (the "Motion") filed on October 25, 2005. Upon due consideration of the Motion, the response in opposition filed jointly by the Plaintiffs, Robert G. Richardson, Trustee for the liquidation of Sunpoint Securities, Inc. (the "Trustee") and the Securities Investor Protection Corp. ("SIPC") (collectively, the "Plaintiffs"), the reply of City National Bank, N.A. ("CNB"), and the relevant legal authorities, the Court concludes that, for the reasons stated herein, the Motion for Partial Summary Judgment as to the Plaintiffs' RICO Claims should be granted.

## Factual Background

This adversary proceeding is brought by the Trustee and SIPC against CNB as a result of its former relationship with Sunpoint Securities Inc. ("Sunpoint"), a securities brokerage firm formerly based in Longview, Texas, which was forced into liquidation in November 1999, pursuant to the provisions of the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. The entry of a protective decree against Sunpoint, and its subsequent liquidation, was triggered by a misappropriation of customer funds by the CEO, director, and controlling shareholder of Sunpoint, Van R. Lewis, Jr. a/k/a Van R. Lewis, III ("Lewis"), and certain of his subordinates, in an amount exceeding $25 million.

The banking relationship between CNB and Sunpoint, Lewis, and/or various entities controlled by Lewis (the "Affiliates")[1] began around 1995. CNB loaned significant sums of money to Sunpoint, Lewis and the Affiliates. Some of those loans were secured. Others were not. As Sunpoint grew, and then in June 1997, achieved the status of a "self-clearing broker" (which would place customer funds relating to the purchase and sale of securities directly under Sunpoint's custody and control), so did its financial activity. CNB

---

1. The Affiliates include: Sunpoint Aviation, Inc.; Sunpoint Insurance, Inc., a/k/a Sunpoint Insurance Agency, Inc.; Sunpoint Air Transport, Inc.; Sunpoint Institute of Aeronautics, Inc.; Judith Ann Guess, Inc. d/b/a New Territory; Van Lewis, Inc. a/k/a Van Lewis III, Inc.; Financial Firms Exchange, Inc.; and Moonshadow, L.L.P.

was clearly a beneficiary of that growth. To satisfy Sunpoint's need for greater space, it became a tenant in a building owned by CNB. Eventually, CNB's business relationship with Sunpoint and the Affiliates was one of the bank's largest in terms of revenue, deposits, and lending. CNB also served as the IRA custodian for Sunpoint customers from July 1996 until May 1998. While the Trustee and SIPC have alleged extensive wrongdoing by CNB and its officers, at no time did CNB or any of its officers have any ownership interest in Sunpoint or in any of the Affiliates.[2]

The complaint of the Trustee and SIPC against CNB is comprehensive in nature and scope. The Plaintiffs seek to recover the entire $25 million of lost customer funds in actual damages, treble damages of $75 million, plus an assessment of additional exemplary damages, interest and attorneys' fees under various theories of alleged liability including negligence, gross negligence, negligent misrepresentation, breach of fiduciary duty, breach of contract, securities fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). CNB brings this Motion for Partial Summary Judgment as to Plaintiffs' RICO Claims, alleging that the Trustee and SIPC cannot prove as a matter of law certain elements of their RICO claims against CNB.

### Discussion

*Standards for Summary Judgment*

CNB brings its Motion for Partial Summary Judgment as to the RICO claims pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). "The inquiry to be performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Only once the moving party has met this burden does the nonmoving party assume the burden of showing that a genuine issue of material fact exists. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir.2005) (*citing Catrett*, 477 U.S. at 321–25, 106 S.Ct. at 2548). As more particularly described by Judge William Wayne Justice in *Marshall Indep. Sch. Dist. v. U.S. Gypsum Co.*, 790 F.Supp. 1291 (E.D.Tex.1992):

> sponded that "CNB invested income and proceeds in Sunpoint and the Affiliates by making loans to those entities."

**2.** Plaintiffs were asked in interrogatories to describe each and every transaction in which CNB invested income in the operations of Sunpoint and/or the Affiliates. Plaintiffs re-

Even where the non-moving party has the burden of persuasion on an issue, the summary judgment movant still has the initial burden of showing the absence of a genuine issue of material fact. It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove its case. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the court need not consider either any evidence submitted by the non-moving party or whether the moving party has met its ultimate burden of persuasion that summary judgment should be granted in its favor.

*Id.* at 1299–1300.

The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial must be borne by the non-moving party, as in the present case, the party moving for summary judgment may satisfy the burden of production under Rule 56 by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. See 10A WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 2727 at pp. 471–72 (1998). *See also, Brewer v. Quaker State Oil Ref. Corp.,* 72 F.3d 326, 329–30 (3d Cir.1995); *Cannon v. Cherry Hill Toyota, Inc.,* 161 F.Supp.2d 362, 366 (D.N.J. 2001).

Once the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510 (*citing* FED.R.CIV.P. 56(e)). The substantive law will identify which facts are material. *Id.*

Thus, if a non-movant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir.2001). As the Supreme Court has stated,

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. Thus, "in the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in

a trial." *Robinson v. Cutchin,* 140 F.Supp.2d 488, 491 (D.Md.2001) (*citing Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2548 *and Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2505); *see also Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 (5th Cir. 1994) ["A plaintiff should not be required to wait indefinitely for a trial when the defendant has a meritless defense that can be resolved on motion for summary judgment. Nor should a defendant be required to bear the unnecessary costs of delay and trial to defend against a claim that has no merit. Neither party should be required to bear the costs of trying all of the issues in a case when some can and should be resolved on summary judgment."].

To determine whether summary judgment is appropriate, the record presented is reviewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Explor. Inc.,* 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510. Accordingly, the process has been described by the Supreme Court as one which mandates the entry of summary judgment where the evidence is such that it would require a directed verdict for the moving party. "In essence,.. the inquiry ... is..: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512; *see also Harken Explor. Co. v. Sphere Drake Ins. Plc,* 261 F.3d 466 (5th Cir.2001) ["There is a genuine issue as to a material fact if the evidence is such that a reasonable jury could return a verdict for the non-movant."].

*Civil RICO*

■ Section 1964(c) of Title 18 of the United States Code creates a civil remedy, complete with a provision granting treble damages, for any person injured "by reason of" any violation of 18 U.S.C. § 1962.[3] The Plaintiffs in this case have accused CNB of violating §§ 1962(a), (c), (d), and aiding and abetting Lewis and the Affiliates' own RICO violations. Common to all claims under § 1962 is the requirement that the plaintiff identify a RICO enterprise. *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 427 (5th Cir.1987). This can be a particular organization or association-in-fact, and for all purposes under § 1962, the Plaintiffs in this case have identified Sunpoint singularly, or in combination with the Affiliates, as the RICO enterprise. *Manax v. McNamara,* 842 F.2d 808, 811 (5th Cir.1988).[4] The Court

---

**3.** Section 1964(c) provides, "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the

damages he sustains and the cost of the suit, including a reasonable attorney's fee."

**4.** *See* Second Amended Original Complaint, dkt. # 259, ¶¶ 84, 92.

will address the unique elements of each of the alleged violations seriatim.

*18 U.S.C. § 1962(a)*

■ To succeed in a cause of action under § 1962(a),[5] a plaintiff must prove: (1) the existence of an enterprise, (2) defendant's derivation of income from a pattern of racketeering activity, and (3) the use or investment of any of that income in acquiring an interest in or operating the enterprise. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). Additionally, a plaintiff must prove that its injury flows from the use or investment of racketeering proceeds, rather than from the underlying predicate racketeering acts. *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir.1992). Some courts address this final requirement in terms of proximate cause. *See, e.g., Heritage Ins. Co. of Am. v. First Nat'l Bank*, 629 F.Supp. 1412 (N.D.Ill. 1986). Others address it as an issue of standing to bring a civil RICO complaint. *See Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 894–96 (8th Cir.1999) *and cases cited therein.*

■ CNB first claims it is entitled to summary judgment on the § 1962(a) claims because the Plaintiffs cannot show that CNB used or invested racketeering income to acquire an interest in or operate the RICO enterprise. The Trustee and

SIPC respond that CNB's acts of loaning money clearly constitute an investment in the operation of the enterprise, citing cases in non-RICO contexts which broadly define "investment" to include loaning money. *Transamerican Leasing Co. v. Three Bears, Inc.*, 586 S.W.2d 472, 475 (Tex.1979) ["The term 'invest' means to loan money on securities . . . or to otherwise lay it out in an effort to produce revenue or income."].

The Plaintiffs, however, have failed to provide, nor has the Court independently located, any authority from any jurisdiction wherein loaning money to an enterprise was determined to be a sufficient basis for liability under § 1962(a).[6] The assessment of such liability seems inappropriate in light of the language of § 1962(a) requiring the act of investing *to acquire an interest in* the RICO enterprise. Loaning money is distinct from investing to acquire an interest in the enterprise, the former involving the pursuit of a return based on the time value of money, and the latter involving the pursuit of a return based on the ability of the enterprise to generate profits. This is a significant distinction in the RICO context, because the stated purpose of the statute is to prevent organized crime from infiltrating legitimate businesses. *See Beck v. Prupis*, 529 U.S. 494, 496, 120 S.Ct. 1608, 1611, 146 L.Ed.2d 561

---

**5.** 11 U.S.C. § 1962(a) provides:
It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

**6.** That is not to say that loaning money could never be the grounds for liability under § 1962(a). It seems likely that loaning money to an enterprise which is controlled by the defendant would be sufficient investment or use of racketeering proceeds in an enterprise, but where there is no evidence to suggest any control or ownership interest in the RICO enterprise, loaning money to the RICO enterprise is insufficient to establish liability under § 1962(a). The Court does note, however, that such behavior would also violate § 1962(b).

(2000); *Reves v. Ernst & Young,* 507 U.S. 170, 182, 113 S.Ct. 1163, 1171, 122 L.Ed.2d 525 (1993) [noting, "In their comments on the floor, members of Congress consistently referred ... to subsection[ ](a) as prohibiting the *acquisition* of an enterprise."]. The risk for criminal infiltration is much greater when some degree of control (i.e. a vote) concerning the activity of an enterprise is gained by virtue of an investment—a situation not present in the context of a loan.

Furthermore, there is no support for the proposition that CNB used racketeering proceeds in the establishment or operation of the RICO enterprise. While it stands unchallenged that borrowed funds were utilized at times by Sunpoint and the Affiliates to operate their enterprise, there is also no dispute that CNB reinvested any money received from Sunpoint into its own banking business—not into the operations of the alleged RICO enterprise (Sunpoint and the Affiliates) which is identified in the complaint.[7]

■ Even if a loan could constitute an investment suitable to support a theory of liability under § 1962(a), the Plaintiffs cannot show that they were harmed by the investment of racketeering proceeds rather than by the predicate racketeering acts themselves. It is undisputed that the only injury asserted is the loss of customer funds exceeding $25 million. The Plaintiffs contend that such an injury is a result of the mail and wire fraud perpetrated upon the IRA customers, which prevented those customers from discovering that their assets had been stolen.[8]

■ The Plaintiffs advance a theory of "but for" causation, asserting that had CNB not loaned money to the enterprise, the enterprise would have cratered long before the largest thefts were accomplished by Lewis and his associates. However, "the use and investment of racketeering income [which] keeps the [enterprise] alive so that it may continue to injure plaintiff is insufficient to meet the injury requirement of section 1962(a)." *Turner v. Union Planters Bank of So. Miss.,* 974 F.Supp. 890, 893–94 (S.D.Miss. 1997) (quoting *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Penn., Inc.,* 848 F.Supp. 569, 582 (E.D.Pa.1994)). As the Eighth Circuit has noted:

> [A]llegations of reinvestment do not suffice to give the plaintiffs standing under §§ 1962(a) and 1964(c). Rather, to bring a claim under § 1962(a), a plaintiff

---

7. The simple point is this: how did CNB use its money? It used it for its own banking enterprise, which admittedly benefitted Sunpoint and its Affiliates at times, but which also was beneficial to numerous other clients. It did not use its money to buy airplanes for Sunpoint Aviation, or to lease classroom space for Sunpoint Institute of Aeronautics, or to advertise investment opportunities for Sunpoint Securities. It is a disingenuous stretch for the Plaintiffs to suggest that CNB used *its* money in the operations of Sunpoint or its Affiliates. Sunpoint used *its* money in *its* operations. Though *some* of that capital may have originated from CNB loans, making loans was CNB's business. It was not the business of Sunpoint or the Affiliates.

8. Query whether CNB's alleged acts of mail and wire fraud were the proximate cause of the Plaintiffs' injury, and not merely one of a series of events *but for* which the injury would not have occurred, but that inquiry is preserved for another day. *See generally Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 266 n. 10, 112 S.Ct. 1311, 1316, 117 L.Ed.2d 532 (1992) ["In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON LAW OF TORTS § 41, p. 264 (5th ed.1984) (quoting *North v. Johnson,* 58 Minn. 242, 59 N.W. 1012 (1894))."].

must allege an injury from the use or investment of the racketeering income that is separate and distinct from injuries allegedly caused by the defendant's engaging in the predicate acts. A distinct injury is required because, if reinvestment "were to suffice, the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation.... Over the long term, corporations generally reinvest their profits, regardless of source."

*Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 896 (8th Cir.1999) (citing *Brittingham v. Mobil Corp.*, 943 F.2d 297, 305 (3d Cir. 1991)).

For these reasons the Court concludes that the Plaintiffs have failed to produce summary judgment evidence sufficient to create a genuine issue of material fact regarding whether CNB used or invested racketeering proceeds in acquisition of an interest in or the operation of the identified RICO enterprise. The Plaintiffs have also failed to produce summary judgment evidence to show any injury flowing from the investment of racketeering proceeds as proscribed by §§ 1964(c) and 1962(a).[9] Thus, CNB is entitled to summary judgment on these issues.

*18 U.S.C. 1962(c)*

■ Section 1962(c)[10] prohibits any person employed by or associated with an enterprise from conducting or participating in the conduct of the affairs of an enterprise through a pattern of racketeering. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 445 (5th Cir.2000). The United States Supreme Court has addressed this section in detail, noting that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, ... one must have some part in directing those affairs." *Reves*, 507 U.S. at 179, 113 S.Ct. at 1170. The Supreme Court reached this conclusion by deducing that:

> On the one hand, "to participate ... in the conduct of ... affairs" must be broader than "to conduct affairs" or the "participate" phrase would be superfluous. On the other hand, as we already have noted, "to participate ... in the conduct of ... affairs" must be narrower than "to participate in affairs" or Congress' repetition of the word "conduct" would serve no purpose.

*Id.* While the Court noted that the statute does not require any party to have a primary role or formal position in the enterprise, "some part in directing the enterprise's affairs is required." *Id.*

■ Despite the apparent clarity of the Court's position on this issue, the Fifth Circuit has stated that "*Reves* only requires that a defendant 'take part in' the operation of the enterprise, not that he direct its affairs." *United States v. Posa-*

9. The Court notes CNB's contention that the Plaintiffs have failed to produce adequate summary judgment evidence that racketeering proceeds (effectively the bank fees, rent, and interest earned from Sunpoint and the Affiliates) as opposed to other bank revenues actually flowed via loans back to the enterprise. While Plaintiffs have clearly failed to trace such proceeds with any degree of precision, the evidence of the scope of CNB's income derived from its relationship with Lewis, Sunpoint and the Affiliates, and the extent of CNB's loans to those entities, when viewed in the light most favorable to the Plaintiffs, would likely be sufficient to avoid summary judgment on that issue.

10. Section 1962(c) provides, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

*da–Rios*, 158 F.3d 832, 856 (5th Cir.1998). Other courts, resolving the apparent conflict in the statements of the two courts, have noted the fundamental difference between vertical chain-of-command participants in an enterprise, as was the case before the Fifth Circuit in *Posada–Rios*, and horizontal associates of an enterprise, as were present in *Reves*. *United States v. Oreto*, 37 F.3d 739, 750 (1st Cir.1994) ["Special care is required in translating *Reves*' concern with 'horizontal' connections—focusing on the liability of an outside adviser—into the 'vertical' question of how far RICO liability may extend within the enterprise but down the organizational ladder."]; *Dale v. Frankel*, 131 F.Supp.2d 852, 857 (S.D.Miss.2001) ["The [Fifth Circuit in *Posada–Rios* ] distinguished *Reves* on the basis that [*Reves* ] involved a defendant with a horizontal connection to the enterprise, whereas the case before [the Fifth Circuit] present[ed] the vertical question of how far RICO liability may extend down the organizational ladder." (internal quotations omitted) ]. Thus, absent the fulfillment of some position in an enterprise's vertical chain of command, a defendant will only be liable under 1962(c) if he has some role in directing the affairs of the enterprise. CNB's role, if any, in the RICO enterprise alleged by the Plaintiffs, was not within the chain of command, but rather was a horizontal relationship to which the standard expressed in *Reves* applies.

Shortly after the Supreme Court decided *Reves*, a district court in Iowa was called upon to apply *Reves* in the context of a defendant bank's participation in an fraudulent investment scheme which cost investors millions of dollars. *De Wit v. Firstar Corp.*, 879 F.Supp. 947 (N.D.Iowa 1995). Facing facts analogous to those before this Court, the court phrased the issue it faced as "whether, ... the defendants' operation of a tangential albeit essential [banking] function, which was the cornerstone upon which a RICO enterprise's operations was based, is sufficient 'participation' in the 'operation and management' of the RICO enterprise itself to incur RICO liability." *Id.* at 964. The court found that the bank's involvement in the enterprise was insufficient to find liability under § 1962(c), stating, "It is not enough that [the] RICO enterprise might not have been able to function without the banking scheme in place.... [E]ven provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise." *Id.* at 966 (italics added).

The *De Wit* reasoning is compelling in the present context. CNB played no role in directing the affairs of Sunpoint or the Affiliates. CNB provided banking services and leased space to the enterprise, and while those services may have been essential to the enterprise, they do not constitute participation in the conduct of such enterprise.[11] The Plaintiffs have failed to produce summary judgment evidence sufficient to create a genuine issue of material

11. The Court notes language from the *De Wit* opinion acknowledging that behavior of the bank may have been wrongful even though it did not breach § 1962(c). *De Wit*, 879 F.Supp. at 965 [noting, "This is not to say that plaintiffs have necessarily failed to allege that defendants' conduct was wrongful, either because it might be contrary to acceptable banking practices, fraudulent, or otherwise tortious."]. The present Plaintiffs, in their response to this Motion, allege a litany of conduct they contend was wrongful (including handling and/or mishandling the IRA custodial accounts), in an attempt to raise a factual issue regarding the merits of this Motion. But little if any of that allegedly wrongful conduct has any bearing on the issues raised in the Motion, to wit, CNB's investment in the enterprise, CNB's participation in the conduct of the enterprise, etc.

fact regarding whether CNB conducted or participated in the conduct of the affairs of the RICO enterprise. CNB is therefore entitled to summary judgment on Plaintiffs' 1962(c) claims.

*18 U.S.C. § 1962(d)*

Section 1962(d) prohibits conspiring to violate § 1962(a), (b), or (c). CNB contends that if it is entitled to summary judgment on Plaintiffs' claims under both (a) and (c), then it cannot be held liable for conspiring to violate those sections under (d). The Plaintiffs respond that liability for conspiracy can exist independent of liability for the substantive act. In support, they cite a plethora of criminal RICO conspiracy cases, but the Supreme Court has noted the common law relevant to understanding the interaction of § 1964(c) (allowing for civil liability) and § 1962(d) is that of *civil,* not criminal conspiracy. *Beck v. Prupis,* 529 U.S. 494, 501 n. 6, 120 S.Ct. 1608, 1614, 146 L.Ed.2d 561 (2000).

■ Plaintiffs also rely upon a single Fifth Circuit opinion addressing a complaint based entirely on common law civil conspiracy, not on a statutory civil RICO conspiracy. *Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1195 (5th Cir.1995). That case notes that the common law of civil conspiracy requires only "that the plaintiff be able to plead and prove one or more wrongful, overt acts in furtherance of the conspiracy that would have been actionable against the conspirators individually." *Id.* (italics and internal quotations omitted). However, the Fifth Circuit has clearly required that, to succeed on a statutory civil conspiracy theory under § 1962(d), a plaintiff must be able to plead and prove a violation of a provision of subsection (a), (b), or (c) of § 1962. *Nolen v. Nucentrix Broadband Networks*

*Inc.,* 293 F.3d 926, 930 (5th Cir.2002) ["The failure to plead the requisite elements of either a § 1962(a) or § 1962(c) violation implicitly means [the plaintiff] cannot plead a conspiracy to violate either section." (quoting *Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073, 1084 (9th Cir. 2000)) ]. In essence, to prove a common law civil conspiracy, any actionable wrongful act will do, but to prove a civil conspiracy to violate the RICO statute, the necessary wrongful act must be a violation of the RICO statute. Because CNB is entitled to summary judgment on Plaintiffs' claims under § 1962(a) and (c), it is also entitled to summary judgment on Plaintiffs' claims under § 1962(d).

*Aiding and Abetting RICO Violations*

■ There is no statutory provision holding persons civilly liable for aiding and abetting violations of the RICO statute.[12] Prior to 1994, several courts, including the Fifth Circuit, had concluded that such a cause of action existed. *Armco Indus. Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475, 485–86 (5th Cir.1986). Analogously, other courts found some validity to the theory of aiding and abetting liability for violations of § 10b of the Securities Exchange Act of 1934, despite a similar lack of any statutory authority for such liability. *Bane v. Sigmundr Explor. Corp.,* 848 F.2d 579 (5th Cir.1988); *Woodward v. Metro Bank,* 522 F.2d 84 (5th Cir.1975). However, by 1992, the Fifth Circuit began to note the danger of imposing civil liability for aiding and abetting absent specific authorization from Congress. *Akin v. Q–L Investments, Inc.,* 959 F.2d 521, 525 (5th Cir.1992)["[I]t is now apparent that open-ended readings of the duty stated by Rule 10b–5 threaten to rearrange the congressional scheme. The added layer of liability

12. Note that by contrast, 18 U.S.C. § 2 provides for criminal liability for aiding and abetting *all* federal criminal statutes. "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2 (West 2005).

... for aiding and abetting ... is particularly problematic.... There is a powerful argument that ... aider and abettor liability should not be enforceable by private parties pursing an implied right of action."].

The death knell to extra-statutory aider and abettor liability, however, came from the United States Supreme Court in *Central Bank of Denver v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). The Supreme Court held:

> Congress has not enacted a general civil aiding and abetting statute ... for suits by private parties. Thus, when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors.

*Id.* at 182, 114 S.Ct. at 1450–51. While *Central Bank* involved civil aider and abettor liability in the context of Rule 10b, other courts in this circuit have noted, without reversal, its application in the civil RICO context. *In re MasterCard Int'l Inc.,* 132 F.Supp.2d 468, 495–96 (E.D.La. 2001) ["Thus, without further guidance from the higher court, this Court finds that aiding and abetting liability under § 1962(c) was eliminated by the Court's holding in *Central Bank.*"] *aff'd,* 313 F.3d 257 (5th Cir.2002); *Strain v. Kaufman County Dist. Attorney's Office,* 23 F.Supp.2d 685, 697 (N.D.Tex.1998). Other circuit courts of appeal have adopted the same preclusive interpretation, while expressly rejecting the alternative theory that civil aider and abettor liability is somehow rooted in common law. *Penn. Ass'n of Edwards Heirs v. Rightenour,* 235 F.3d 839, 843 (3d Cir.2000), *cert. denied,* 534 U.S. 816, 122 S.Ct. 43, 151 L.Ed.2d 15 (2001). The great weight of authority establishes that *Central Bank* precludes any civil remedy for aider and abettor liability under § 1962 and, as such, CNB is entitled to summary judgment on the Plaintiffs' claims for aiding and abetting RICO violations.

### Conclusion

For the above-stated reasons, the Court concludes that CNB's Motion for Partial Summary Judgment as to Plaintiffs' RICO Claims should be granted, such that summary judgment is rendered in favor of City National Bank on Plaintiffs' claims under paragraphs J ("Violations of §§ 1962(a) and (d) of RICO"), K ("Violations of §§ 1962(c) and (d) of RICO"), and L ("Aiding and Abetting Violations of RICO") set forth in the Plaintiffs' Second Amended Original Complaint. An appropriate order will be entered consistent with this opinion.